1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JULIE CORZINE, | Case No.  15-cv-05764-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND TERMINATING MOTION TO STAY DISCOVERY AS MOOT** |
| WHIRLPOOL CORPORATION, | |
| Defendant. | [Re:  ECF 57, 58] |

Plaintiff Julie Corzine ("Corzine") brought this suit individually and on behalf of those similarly situated against Defendant Whirlpool Corporation ("Whirlpool") for purportedly defective freezer drain tube in her refrigerator-freezer ("refrigerator").  Corzine alleges several claims including failure to warn, manufacturing and design defects, negligence, breach of express and implied warranties and other statutory violations.  Second Amended Complaint ("SAC").

Presently before the Court are two motions.  First, Whirlpool moved to dismiss Corzine's SAC.  Second, Whirlpool seeks to stay discovery pending resolution of its motion to dismiss. Having reviewed the submissions of the parties and the governing law, the Court GRANTS IN PART and DENIES IN PART Whirlpool's motion to dismiss and TERMINATES the motion to stay discovery as moot.

## I.   BACKGROUND

In late 2009 and early 2010, Whirlpool began selling combination refrigerator-freezers containing a freezer drain tube that is supposed to channel defrosted water from the freezer into a drain pan. SAC ¶ 25.  Corzine purchased Whirlpool's refrigerator in November 2010 and observed that her refrigerator leaked water onto her kitchen floor for the first time in late October or early

United States District Court
Northern District of California

1    November of 2014.  *Id.* ¶ 40-41.  From then on, Corzine experienced leaked water approximately

2    every two weeks.  *Id.* ¶ 42.  The volume of the leaked water ranged from about a quart to about 80

3    ounces and sometimes pooled across the entire width of her kitchen floor.  *Id.*  Even after the

4    freezer cabinet was defrosted, the leaking would resume a few weeks later and Corzine had to

5    defrost her freezer about six times.  *Id.*

6            Corzine alleges that the defective drain tube of her refrigerator caused these leaks.  *Id.* ¶

7    26.  According to Corzine, the drain tube contains a rubber grommet component resembling a

8    duck bill that is prone to becoming clogged, damming the flow of defrosted water from the

9    freezer.  *Id.*  As a result, the trapped water then freezes, forming a solid plug of ice.  *Id.*  Corzine

10   alleges that large quantities of water and ice accumulate in the freezer over time, resulting in leaks

11   to areas below and surrounding the refrigerator.  *Id.*  Corzine asserts that the leaks posed

12   unreasonable safety risks to consumers, including the risk of slipping in high foot traffic areas like

13   the kitchen, and of electric shock caused by water coming into contact with electric components of

14   the refrigerators and other nearby appliances.  *Id*. ¶¶ 27, 42.

15           On May 27, 2016, the Court granted Whirlpool's motion to dismiss Corzine's first

16   amended complaint with leave to amend.  Corzine timely filed a second amended complaint on

17   July 8, 2016.  Whirlpool now has moved to dismiss this SAC and to stay discovery pending the

18   resolution of this motion to dismiss.

19   **II.     LEGAL STANDARD**

20           To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual

21   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

22   556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

23   When considering a motion to dismiss, the Court "accept[s] factual allegations in the complaint as

24   true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek*

25   *v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court "need not,

26   however, accept as true allegations that contradict matters properly subject to judicial notice or by

27   exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

28

III.     **DISCUSSION**

A.      **Claims 1-5: Strict Liability and Negligence**

Under California law, "where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Economic loss consists of damages for inadequate value, cost of repair, cost of replacement of defective products, and lost profit. *Id.* This so-called "economic loss rule" "prevent[s] the law of contract and the law of tort from dissolving one into the other." *Id.*; *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050 (9th Cir. 2014).

In a prior order granting Whirlpool's motion to dismiss, the Court found that Corzine had insufficiently alleged strict liability and negligence tort claims in her first amended complaint. ECF 48. Specifically, Corzine had not provided sufficient detail regarding the nature of her harm, such as any physical injuries or damages from water leaks or her supposed exposure to electrical shock and toxic mold. *Id.* Now in the SAC, Corzine has provided more detail relating to the volume of leaked water and the extent of the leaks. SAC ¶ 42. However, factual allegations of any personal injury and property damage remain absent. At the hearing on October 13, 2016, the Court related to Corzine this deficiency and Corzine acknowledged that without the necessary factual allegations, the economic loss rule would indeed bar these tort claims. Corzine also did not proffer any other facts or arguments that would render these claims viable. Accordingly, the Court GRANTS the motion to dismiss Claims 1 to 5 without leave to amend.

B.      **Claim 6: Breach of Express Warranty**

With respect to the breach of express warranty, Whirlpool argues that Corzine has not adequately alleged this claim because the express warranty expired one year after the purchase and Corzine did not contact Whirlpool's customer service until almost five years after her purchase. Mot. 6. Whirlpool further argues that Corzine acknowledged in her SAC that the defect did not manifest itself within the warranty period. *Id.* at 6-7. Corzine counters that Whirlpool's Technical Service Pointer (TSP) issued to its refrigerator servicers is a "continued commitment to warrant" the refrigerators beyond the initial one-year period. Opp. 6. Corzine also argues that Whirlpool's

3

"promise to repair defects that occur during a future period is the very definition of express warranty of future performance." *Id.* at 7 (citing to *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 217 (Ct. App. 1991)). Corzine then concludes that due to the latent defect, the allegations are timely made. Opp. 7-8.

There is no dispute that the Corzine bought her refrigerator in November 2010, and that the terms of the accompanying express warranty applied only for "one year from the date of purchase." SAC ¶¶ 40, 99; Ex. 1. The TSP Corzine relies on in relation to the argument of promise for future repairs also explicitly states that Whirlpool "will pay for repair and labor . . . up to 2 years from the date of purchase" and will supply "repair parts through the normal Parts distribution channel at no cost to the consumer for this repair on all units that are beyond 2 years from the date of purchase." SAC ¶ 100; Ex. 2. However, Corzine did not encounter the alleged defect in her refrigerator until late October or early November 2014. SAC ¶ 41. This is beyond the express warranty period Corzine received along with her purchase, as well as the two-year term in the TSP issued to servicers. Corzine also conceded at the hearing that she has received the parts for repair in accordance with the terms of the TSP. As such, Corzine's allegations fail to support a claim for breach of express warranty.

Corzine's arguments relating to latent defects and a promise for future repair do not compel a different conclusion. The Ninth Circuit in *Clemens v. DaimlerChrysler Corporation* made clear that California has foreclosed the possibility that a latent defect can extend the term of an express warranty. 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Daughterty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006)). The *Clemens* court noted that "[e]very manufactured item is defective at the time of sale in the sense that it will not last forever" so it is the term of the warranty that determines the useful life of the product. 534 F.3d at 1023. *Krieger*, a case Corzine cites, is inapposite. 234 Cal. App. 3d at 216-17. The court in *Krieger* was mainly concerned with whether the suit was timely filed against a car dealer and was interpreting the statute setting forth a four-year statute of limitations for breach of warranty claims. 234 Cal. App. 3d at 211; Cal. Com. Code § 2725 ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued"). The plaintiff in *Krieger* submitted the car to the dealer for

4

repair within the warranty period of 36 months or the first 36,000 miles of use, but did not file suit until after four years had elapsed. 234 Cal. App. 3d at 218, 285. Reversing the summary judgment for the car dealer, the court found that there was an issue of material fact as to applicability of discovery rule on when the action accrued. *Id.* at 219. The court reasoned that the action did not accrue on tender of delivery but later based on the statutory exception for the term explicitly included in the warranty – the period of "36 months or the first 36,000 miles of use." *Id.* at 215. The facts and holdings of *Krieger* are not applicable because whether the claim for breach of express warranty was filed within the statute of limitations is not an issue presented here. Further, unlike Corzine here, the plaintiff in *Krieger* notified the defendant of the car defect within the term of the express warranty.

At the hearing, Corzine represented to the Court that she does not intend to amend the claim to overcome the deficiencies of this breach of express warranty claim. In light of Corzine's representation, the Court GRANTS Whirlpool's motion to dismiss Claim 6 on the breach of express warranty without leave to amend.

### C.    Claim 7: Breach of Implied Warranty of Fitness

With respect to the breach of implied warranty of fitness for a particular purpose, Whirlpool argues that Corzine has failed to allege any particular purpose or how the purported defect rendered the refrigerator-freezer unfit for that unspecified particular purpose. Mot. 8. Corzine fails to provide an argument on this issue in her opposition.

Implied warranty of fitness for a particular purpose "differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1295 n.2 (1995); Cal. Com. Code § 2315, cmt. 2. The Court agrees with Whirlpool and finds no allegations relating to any particular purpose different from the ordinary purpose of a refrigerator. Corzine also conceded at the hearing that she does not oppose Whirlpool's motion to dismiss this claim. Accordingly, the Court GRANTS Whirlpool's motion to dismiss Claim 7 without leave to amend.

### D.     Claim 8: Breach of Implied Warranty of Merchantability

#### i.     Sufficiency of the Allegation

For this claim, Whirlpool argues that the main purpose of a refrigerator is to keep food cold and the factual allegations do not support that Corzine's refrigerator failed to fulfill that purpose.  Mot. 8; Reply 5.  Whirlpool further finds unsupported Corzine's argument that the implied warranty applies to the drain pipe component as opposed to the refrigerator as a whole.  Mot. 8.  In addition, Whirlpool contends that the periods during which the refrigerator had to be defrosted were routine maintenance and did not make the refrigerator unfit for its ordinary purpose.  Reply 5.  Corzine counters in her opposition that the failure resides in the purpose of the drain tube of the refrigerator, which is to drain defrosted water from the freezer into a drain pan.  Opp. 9.  Corzine additionally claims that when the refrigerator was taken out of service, approximately six times, while it was defrosted it could not have performed the function of keeping food cold.  *Id.*

"[A] breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use."  *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003); Cal. Com. Code § 2314.  The mere manifestation of a defect by itself would not constitute a breach of the implied warranty of merchantability but the defect must be so basic that it renders the product unfit for its ordinary purpose.  *See Am. Suzuki Motor*, 37 Cal. App. 4th at 1296.  In light of the fact that an implied warranty of merchantability implicates a fundamental defect, the Court agrees with Whirlpool that merchantability should not be evaluated at the component level but the product should be analyzed as a whole.  *Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1330 (2014) ("[T]o warrant that all components are fit for an ordinary purpose would be strange, given that the components have often been utilized for a particular purpose within the larger consumer good of which they became a part.").  Accordingly, the allegation of defective drain tubes alone would not support a breach of implied warranty.  Neither would the allegations concerning the routine maintenance of defrosting that supposedly rendered the refrigerator unfit for its ordinary purpose.

Nevertheless, Corzine has adequately pled this claim based on the allegation that in

1    addition to keeping food cold, the refrigerator had a purpose of properly channeling defrosted

2    water so to avoid leakage.  Although Whirlpool insists that with or without leakage, the

3    refrigerator still fulfilled its purpose of keeping food cold, the Court finds this designated purpose

4    too restrictive.  Gone are the days of ice harvesting, thanks to modern day refrigerators, the

5    purpose of which should then encompass more functions than a block of ice.  As such, the Court

6    finds plausible that the ordinary purpose of a refrigerator spans beyond keeping food cold and can

7    include the purpose of collecting defrosted water.

<br>

8                    **ii.**      **Whether the Claim is Time-Barred**

9              Whirlpool argues that Corzine's allegations of equitable tolling are insufficient to

10   overcome the four-year statute of limitations applicable to the claim of breach of implied

11   warranty.  Mot. 9.  First, Whirlpool claims that there is no duty to disclose because there was

12   neither affirmative misrepresentation nor safety risk.  *Id.* at 9-10.   Second, Whirlpool contends

13   that the allegations do not meet the heightened pleading standard under Fed. R. Civ. P. 9(b).  *Id.* at

14   10-11.  In opposing the motion, Corzine argues that the SAC alleges that Whirlpool knew of the

15   safety risk between late 2009 and late 2010.  Opp. 10; SAC ¶ 28.  According to Corzine,

16   Whirlpool also started internal testing and redesign efforts before late 2010.  Opp. 11; SAC ¶ 29.

17   Corzine further alleges that the 2010 redesign efforts failed to remedy the problem and Whirlpool

18   had to implement another overhaul for a period of time before November 2013.  Opp. 11; SAC ¶¶

19   33-35.  The SAC alleges that even when Whirlpool issued the TSP in November 2013, the defect

20   remained undisclosed to Corzine and others similarly situated.  SAC ¶¶ 37-38.

21             California Commercial Code section 2725 imposes a four-year statute of limitations for

22   Corzine's implied-warranty claim.  Cal. Com. Code § 2725(1).  However, a "defendant's fraud in

23   concealing a cause of action against him tolls the applicable statute of limitations."  *Regents of*

24   *Univ. of Cal. v. Superior Court*, 20 Cal. 4th 509, 533 (1999).  The elements of fraudulent

25   concealment are: (1) suppression or concealment of a material fact; (2) defendant was under a duty

26   to disclose the material fact to plaintiff; (3) concealing the fact was intentional in order to defraud

27   plaintiff; (4) plaintiff was unaware of the fact and would have acted otherwise had he or she

28   known of that fact; and (5) plaintiff suffered damage as a result of the concealment.  *Marketing*

United States District Court
Northern District of California

7

1   *W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 613 (1992); *Williamson v. Gen.*

2   *Dynamics Corp.*, 208 F.3d 1144, 1156 (9th Cir. 2000). "Because concealment is a cause of action

3   for fraud, it must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*,

4   567 F.3d 1120, 1125 (9th Cir. 2009).

5          The Court finds that factual allegations, relating to Whirlpool's knowledge of the defect

6   and its multiple attempts to remedy the defect, support Whirlpool's alleged knowledge of safety

7   risk. Based on this alleged knowledge, duty to disclose is also adequately pled at this stage even if

8   there were no affirmative misrepresentations. Further, the customer complaints, the representation

9   in the TSP, the lack of disclosure to consumers, as well as other conduct of Whirlpool alleged in

10  the SAC are sufficiently specific to meet Rule 9(b). According to Corzine, she would not have

11  paid or would have paid less for the refrigerator had she known about the defects. SAC ¶¶ 31, 46.

12  The Court finds these allegations of fraudulent concealment adequate at this stage.

13         Since the Court finds the claim of breach of implied warranty and the fraudulent

14  concealment adequately pled, Whirlpool's motion to dismiss this claim is DENIED.

15         **E.     Claim 9: the Song-Beverly Act violation**

16         The Song-Beverly Act provides that "every sale of consumer goods that are sold at retail in

17  [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty

18  that the goods are merchantable." Cal. Civ.Code § 1792. The Song-Beverly Act is similar to a

19  claim of implied warranty except that it applies only to consumer products and has no privity

20  requirement. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1107 (N.D. Cal. 2015). Here, the claims

21  of the Song-Beverly Act violation and of the breach of implied warranty are not distinguishable.

22  In fact, Corzine's allegations in support of her implied and express warranty claims are the same

23  as those in support of her claim of the Song-Beverly Act violation. SAC ¶ 139. In light of the

24  Court's ruling to allow the claim of implied warranty to proceed, the Court DENIES Whirlpool's

25  motion to dismiss the claim of Song-Beverly Act violation to the extent the claim is based on the

26  allegations directed to the claim of breach of implied warranty of merchantability.

27

28

United States District Court
Northern District of California

**F.    Claim 10-11: Violations of California Business and Professions Code, and California Consumers Legal Remedies Act**

Whirlpool and Corzine premise their arguments in relation to these claims on those made for prior claims.  Whirlpool reiterates its argument that Corzine has failed to allege a duty to disclose as well as any misrepresentations.  Mot. 13-15.  Corzine responds that Whirlpool's breach of warranties constitutes unlawful conduct actionable under California's Unfair Competition Law ("UCL").  SAC ¶ 140; Opp. 13.  Corzine also contends that Whirlpool's failure to disclose defective drain tubes is actionable under California's Consumer Legal Remedies Act ("CLRA"), as well as under UCL.  SAC ¶ 151; Opp. 14.

California's UCL proscribes business practices that are unlawful, unfair, or fraudulent. Cal. Bus. and Prof. Code §§ 17200 *et seq.*  "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder."  *Farmers Ins. Exch. v. Super. Court*, 2 Cal.4th 377, 383 (1992).  As for California's Consumer Legal Remedies Act ("CLRA"), CLRA proscribes (1) "Representing that goods . . . have . . . characteristics . . . which they do not have . . . ," and (2) "Representing that goods . . . are of a particular standard, quality, or grade, . . . if they are of another."  Cal. Civ. Code § 1770(a)(5), (7).  In the absence of affirmative misrepresentation, UCL and CLRA claims can also proceed on the basis of a fraudulent omission.  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).

As with the breach of implied warranty claim and the related fraudulent concealment allegations, the primary issue here for both UCL and CLRA is whether Corzine has adequately pled Whirlpool's duty to disclose the allegedly defect of her refrigerator.  Because the Court has found Corzine's claim of breach of implied warranty adequately pled, the motion to dismiss the UCL and CLRA claims are DENIED, to the extent they also rely on allegations in support of the claim of breach of implied warranty of merchantability and on allegations relating to Whirlpool's failure to disclose defective drain tubes.

United States District Court
Northern District of California

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

Claims 1-5 for Strict Liability: Failure of Warn, Manufacturing Defect, Design Defect; Negligence; and Negligence: Failure to Recall/Retrofit are DISMISSED WITHOUT LEAVE TO AMEND.

Claim 6 for Breach of Express Warranty is DISMISSED WITHOUT LEAVE TO AMEND.

Claim 7 for Breach of Implied Warranty of Fitness for a Particular Purpose is DISMISSED WITHOUT LEAVE TO AMEND.

Whirlpool's motion to dismiss Claim 8 for Breach of Implied Warranty of Merchantability is DENIED.

Whirlpool's motion to dismiss Claim 9 for violation of the Song-Beverly Act is DENIED.

Whirlpool's motion to dismiss Claim 10 for violation of UCL is DENIED, to the extent Claims 10 relies on the same allegations as those in support of the breach of implied warranty of merchantability and the allegations relating to Whirlpool's failure to disclose defective drain tubes.

Whirlpool's motion to dismiss Claim 11 for violation of CLRA is DENIED, to the extent Claim 11 relies on the allegations relating to Whirlpool's failure to disclose defective drain tubes.

Whirlpool's motion to stay discovery pending resolution of this motion to dismiss is TERMINATED AS MOOT, as the Court has allowed Claim 8, breach of implied warranty of merchantability, and the statutory violation claims to proceed in this case.

Dated: November 2, 2016

_____
BETH LABSON FREEMAN
United States District Judge