Graham B. LippSmith, SBN 221984
glippsmith@klwtlaw.com
Celene Chan Andrews, SBN 260267
candrews@klwtlaw.com
Jaclyn L. Anderson, SBN 258609
janderson@klwtlaw.com
Frank A. Perez, SBN 305832
fperez@klwtlaw.com
**KASDAN LIPPSMITH WEBER TURNER LLP**
360 East 2nd Street, Suite 300
Los Angeles, California 90012
Tel: 213-254-4800
Fax: 213-254-4801

Scott J. Thomson, SBN 237052
sthomson@kasdancdlaw.com
**KASDAN LIPPSMITH WEBER TURNER LLP**
100 Pringle Avenue, Suite 700
Walnut Creek, California 94596
Tel: 925-906-9220
Fax: 925-906-9221

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE CORZINE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> WHIRLPOOL CORPORATION, a Delaware corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.:  5:15-cv-05764-BLF <br><br> **THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date: November 22, 2019 <br> Time: 10:00 a.m. <br> Dept.: Courtroom 3 <br><br> Judge: Hon. Beth Labson Freeman |

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

TO THE COURT, ALL PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE THAT, on November 22, 2019, at 10:00 a.m. in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 South First Street, 5th Floor, San Jose, CA 95113, before the Honorable Beth Labson Freeman, and pursuant to Federal Rule of Civil Procedure 23, Plaintiff Julie Corzine ("Plaintiff"), on behalf of herself and the Settlement Class, will and hereby does make this motion ("Motion") for an Order Granting Final Approval of Settlement with Defendant Whirlpool Corporation ("Settlement"),[1] which the Court preliminarily approved on August 21, 2019. The Class respectfully requests that the Court grant this Motion along with the previously filed and pending Motion for Attorney Fees, Costs Reimbursement, and Incentive Award (Dkt. 129). The only other party, Defendant Whirlpool Corporation ("Whirlpool") does not oppose these motions.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declarations of Graham B. LippSmith, Denise Earle, and Jason Bass filed in support of the Motion, the [Proposed] Final Order Approving Class Settlement, the [Proposed] Judgment, the papers filed in support of the Class' Motion for Attorney Fees, Costs Reimbursement, and Incentive Award, the pleadings, records, papers, and documents on file herein and such other and further oral and documentary evidence as may be presented at the time of the hearing on this matter. The Class respectfully request that the Court grant the Motion in its entirety.

Dated:  November 8, 2019                    KASDAN LIPPSMITH WEBER TURNER LLP


                                            By:      _/s/ Graham B. LippSmith_____
                                                     Kenneth S. Kasdan
                                                     Graham B. LippSmith

---

[1] Capitalized terms not otherwise defined in this Motion shall have the definitions ascribed to them in the First Amended Settlement Agreement and Release of Claims attached as Exhibit A to the Supplemental Declaration of Graham B. LippSmith (Dkt. 125-1).

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Celene Chan Andrews
Jaclyn L. Anderson
Frank A. Perez

*Attorneys for Plaintiff and the Class*

THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND ................................................................................. 2

III.    SETTLEMENT TERMS ................................................................... 6

    A.    Benefits for Past Freezing Events ................................... 7

    B.    Reimbursement of Out-of-Pocket Expenses ..................... 8

    C.    Reduction for Previous Compensation by Whirlpool ........ 8

    D.    Benefits for Future Freezing Events ................................ 9

IV.    THE CLASS RESPONSE IS IN FAVOR OF THE SETTLEMENT ........ 9

    A.    The Administrator Received More Than 18,000 Claims to Date ..................... 9

    B.    The 18 Objections Should Be Overruled ....................... 10

        1.    Settlement Benefits Are Substantial Even Though They Are Limited to Freezing Events Occurring within Five Years of Purchase. ............... 11

        2.    A Fair and Sizeable Settlement Should Not Be Set Aside Because It Does Not Fully Compensate Every Loss By Every Class Member. .. 12

        3.    Reimbursing Class Members Previously Compensated By Extended Warranties Would Result in a Windfall for Them. ............................ 14

        4.    The Remaining Objections Should Be Overruled. ............................ 14

    C.    Nobody Opposed or Objected to the Requested Attorney Fees, Costs Reimbursement, or Incentive Award ............................................. 16

V.    GRANTING FINAL APPROVAL IS APPROPRIATE ........................ 16

    A.    Legal Standards ........................................................... 16

    B.    The Court Should Grant Final Approval of the Settlement ........................... 17

1. The Strength of Plaintiff's Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation ................................................... 17

2. The Risk of Maintaining Class Action Status Through Trial ............. 17

3. The Amount Offered in Settlement .................................................... 18

4. The Extent of Discovery Completed and the Stage of the Proceedings ......................................................................................... 18

5. The Experience and Views of Counsel ............................................... 19

6. The Presence of a Governmental Participant ...................................... 20

7. The Reaction of the Class to the Settlement ....................................... 20

VI. CONCLUSION ............................................................................................ 21

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) .................................. 17

5

*Chambers, et al. v. Whirlpool*, No. 17-cv-01664-JSW (2017) ................................. 3

6

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004) ............................... 10

7

*Create-A-Card, Inc. v. Intuit, Inc.*, 2009 U.S. Dist. LEXIS 93989 (N.D. Cal. 2009) ............. 10

8

*Eisen v. Porsche Cars N. Am., Inc.*,

9

   2014 U.S. Dist. LEXIS 14301 (C.D. Cal. Jan. 30, 2014) ....................................... 11, 12, 14

10

*Gardner v. GC Servs., LP*, 2012 U.S. Dist. LEXIS 47034 (S.D. Cal. 2012) ......................... 17

11

*Garner v. State Farm Mut. Auto. Ins. Co.*,

12

   2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) ................................... 10

13

*Garner v. State Farm Mut. Auto. Ins. Co.*,

14

   2010 U.S. Dist. LEXIS 49477 (N.D. Cal. April 22, 2010) ................................ 21

15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................. 11, 13

16

*Henderson v. Volvo Cars of N. Am. LLC*,

17

   2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013) ..................................... 11

18

*Hendricks v. StarKist Co.*, 2016 U.S. Dist. LEXIS 134872 (N.D. Cal. Sept. 29, 2016) ........ 12

19

*Hyundai and Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. Jan. 23, 2018) ................. 3

20

*In re MagSafe Apple Power Adapter Litig.*,

21

   2015 U.S. Dist. LEXIS 11353 (N.D. Cal. 2015) ................................................ 10

22

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................. 10, 20

23

*Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*,

24

   2011 U.S. Dist. LEXIS 21824 (S.D. Cal. 2011) ................................................ 20

25

*Kacsuto v. Lenovo (United States) Inc.*, 2014 U.S. Dist. LEXIS 174510 (C.D. Cal. 2014) ... 13

26

*Ko v. Natura Pet Products, Inc.*,

27

   2012 U.S. Dist. LEXIS 128615 (N.D. Cal. Sept. 10, 2012) ............................... 10

28

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ....................... 17, 18

iii

1

## <u>TABLE OF AUTHORITIES (Continued)</u>

2
<b><u>Page(s)</u></b>

3

4    *Mendoza v. Hyundai Motor Co.*, 2017 U.S. Dist. LEXIS 9129 (N.D. Cal. 2017)...... 12, 14, 15

5    *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)........... 19

6    *Officers for Justice v. Civil Service Com.*, 688 F.2d 615 (9th Cir. 1982)............................. 13

7    *Petrovic v. Amoco Oil Corp.*, 200 F.3d 1140 (8th Cir. 1999).................................. 11

8    *Sadowska v. Volkswagen Group of Am., Inc.*,

9      2013 U.S. Dist. LEXIS 188582 (C.D. Cal. Sept. 25, 2013).............................. 11, 14, 16, 17

10   *United States v. State of Oregon*, 913 F.2d 576 (9th Cir. 1990)............................. 10

11   *Zakskorn v. Am. Honda Motor Co.*, 2015 U.S. Dist. LEXIS 74550 (E.D. Cal. 2015) ........... 10

12

13   **Statutes**

14   28 U.S.C. § 1715......................................................................................................... 20

15   Fed. R. Civ. P. 23(e)(2)................................................................................................. 2

16

17

18

19

20

21

22

23

24

25

26

27

28

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3   The Court granted preliminary approval of the Settlement, which essentially creates a

4   very lengthy extended warranty program for parts and labor to remedy defective refrigerator

5   drain tubes. If granted final approval, the Settlement requires Whirlpool to pay *uncapped* sums

6   to Class Members for labor reimbursements not exceeding $150 per unit and, for qualifying

7   Future Freezing Events, to pay labor and parts costs through 2026.

8   Following preliminary approval, the Settlement Administrator disseminated notice to the

9   Class in accordance with the Notice Plan and the Court's Order Granting the Stipulated Request

10   to Modify Notice Plan (Dkt. 128). This comprehensive Notice Plan included direct notice by

11   mail or email to more than 1.2 million Class Members, publication notice in *People* magazine, a

12   targeted internet banner campaign, and a case-dedicated settlement website—all of which

13   ensured a reach of 71.99% and an approximate average reach frequency of 2.99 times each.

14   After years of contested litigation, important Ninth Circuit jurisprudence on nationwide

15   class action settlements, and significant contingent risk over those years, this Settlement would

16   provide Class Members compensation for past labor and parts, as well as comprehensive

17   protection for future covered failures in the Whirlpool drain tube. Applying the updated analysis

18   by Class Counsel's expert economist and C.P.A., Jason Bass, the floor Settlement value, taking

19   into account the present day fair market value of the extended warranty program conferred to *all*

20   Class Members upon final approval, the Notice Plan costs, attorney fees, attorney costs

21   reimbursement, and Service Award, totals $15,866,833. Measuring the Settlement value by

22   instead applying Mr. Bass' analysis of Whirlpool's anticipated payout based on claims to date

23   and adding in the Notice Plan costs, attorney fees, attorney costs reimbursement, and Service

24   Award, the Settlement value is $20,743,778.

25   Not only does the Settlement provide substantial benefits, but the Class' response to the

26   Settlement has been overwhelmingly positive. The Settlement website has been visited nearly

27   500,000 times, and more than 18,000 claim forms have been submitted so far. In contrast to this

28   substantial activity showing interest in and support for the Settlement, merely 18 Class

1

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

1   Members objected, and only 199 Class Members excluded themselves from the Settlement.

2   Notably, *none* of the objectors challenged the attorney fees, costs reimbursement, or Service

3   Award the Settlement provides. Because the claims filing deadline for Past Freezing Events is

4   not until the end of January 2020, and because the Settlement will provide benefits for Class

5   Members with Future Freezing Events through 2026, the Settling Parties anticipate tens of

6   thousands more claims through the lengthy benefit period.

7          There is no doubt the Settlement confers substantial benefits to the Class that it might

8   not have otherwise obtained if it faced continued litigation. The higher than anticipated level of

9   early claims activity, very small number of objectors, and very small number of exclusions after

10  execution of the robust Notice Plan demonstrates that the Class overwhelmingly supports

11  approval of the Settlement. Moreover, the lack of *any* opposition or objection to the attorney

12  fees, costs reimbursement, and Service Award the Class seeks further bolsters its final approval.

13         Since the Settlement is more than "fair, reasonable, and adequate," the Class respectfully

14  requests that the Court grant its final approval. Fed. R. Civ. P. 23(e)(2). The Class also

15  respectfully requests that the Court award it the maximum amount of attorney fees, costs

16  reimbursement, and Service Award provided in the Settlement, now updated to be (1)

17  $1,823,394.75 in attorney fees to Class Counsel; (2) $26,605.25 in costs reimbursements to

18  Class Counsel; and (3) $5,000 to the Class Representative.

19

20  **II.    BACKGROUND**

21         **The Lawsuit**

22         On November 13, 2015, Plaintiff filed this class action in Santa Clara Superior Court

23  on behalf of a class of California consumers ("Lawsuit"). The Lawsuit alleges a key defect in

24  certain Whirlpool-manufactured refrigerators; namely, that the Drain Tubes tend to become

25  blocked with ice, overflow with water, and, in certain cases, leak from the bottom of

26  refrigerators. Whirlpool designed, intended, and warranted the Drain Tubes to channel

27  defrosted water from the freezer into a drain pan at the base of Class Refrigerators as part of

28  the daily defrost cycle. Drain Tubes feature a rubber grommet component resembling a

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

duckbill that is prone to clogging with debris, which dams the flow of defrosted water from the freezer. Trapped water then freezes, forming a solid plug of ice. Over time, large quantities of water and ice accumulate, eventually resulting in water leaking out of the freezer, into the refrigerator compartment, and, at times, onto the ground near the refrigerator.

Settling Parties diligently litigated this case for over three and a half years. Such efforts include initial removal of the matter to federal court, three rounds of motions to dismiss, relation of a 2017-filed case, *Chambers, et al. v. Whirlpool*, No. 17-cv-01664-JSW, and both formal and informal discovery exchanges. The parties and their counsel participated in two private mediations before two retired justices serving as mediators, followed by months of exchanging drafts of final settlement terms, notice documents, and claims administration documents.

### Preliminary Approval of the Settlement

The Settling Parties reached final agreement in May 2018, and the Court stayed proceedings pending the Ninth Circuit's *en banc* review of its decision in *In re Hyundai and Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. Jan. 23, 2018) regarding the appropriate choice-of-law analysis as part of preliminary approval of a nationwide class settlement of consumer protection claims. *See* Dkt. 100. On June 6, 2019, the Ninth Circuit decided and published its *en banc* opinion. Accordingly, Plaintiff filed her Motion for Order Granting Preliminary Approval of Settlement, Certifying Provisional Settlement Class, Appointing Settlement Class Counsel, Setting Hearing on Final Approval of Settlement, and Directing Notice to the Class on July 8, 2019 (Dkt. 113). Whirlpool filed its Memorandum in Support of Joint Motion for Preliminary Approval of Class Action Settlement on July 25, 2019. (Dkt. 122).

On August 14, 2019, the Settling Parties provided Notice of Amendments to Class Action Settlement Agreement and Release of Claims. (Dkt. 123). The principal reason for the amendments was Whirlpool's determining that an additional 472,502 refrigerator freezer models should be included in the settlement inventory, expanding the settlement benefits to more refrigerator owners, for a total number of 2,177,502 refrigerator freezer units covered by the Settlement. Supplemental Brief in Support of Joint Mot. for Preliminary Approval of Class Action Settlement, Dkt. 125 at pp. 2-3. The Court held the hearing on Plaintiff's Motion for

3

Preliminary Approval on August 15, 2019, granting preliminary approval contingent upon supplemental briefing regarding the amendments to the Settlement Agreement, including any impact on the Notice Plan. Plaintiff filed the Supplemental Brief in Support of Joint Motion for Preliminary Approval of Class Action Settlement on August 20, 2019 (Dkt. 125), and the Court entered its Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order," Dkt. 126) on August 21, 2019.

The Order Granting Preliminary Approval made the following rulings, among others: (1) that the Class should be preliminarily certified for settlement purposes only; (2) that Plaintiff Julie Corzine be appointed Class Representative for the Settlement Class; (3) that Graham B. LippSmith and Jaclyn L. Anderson of the law firm Kasdan LippSmith Weber Turner LLP be appointed Class Counsel for the Settlement Class; (4) that the Settlement terms are preliminarily approved as fair, reasonable, and adequate; (5) that the proposed Notice Plan be implemented in accordance with the terms of the Settlement Agreement, including approval of the proposed Summary Notice, FAQ, Publication Notice, and Claim Form; (6) and setting procedures for final approval of the Settlement and Class Counsel's separate motion for an order approving attorney fees, litigation expenses, and proposed Service Award to the Class Representative.

Plaintiff filed the Class' Motion for Attorney Fees, Costs Reimbursement, and Incentive Award on September 4, 2019. (Dkt. 129). With costs amounts updated since this filing, the Class seeks an award of $1,823,394.75 in attorney fees, $26,605.25 in costs reimbursements to Class Counsel, and a $5,000 Service Award to Plaintiff Corzine as the Class Representative. *See* Declaration of Graham B. LippSmith in Support of Class' Motion for Final Approval of Settlement and Class' Motion for Attorney Fees, Costs Reimbursement, and Incentive Award ("LippSmith Dec."), ¶¶ 14, 16, 18. With the total Settlement value now also including the Notice Plan and administration costs, the percentage of recovery range has decreased from earlier estimates to now be between 8.8% and 11.5% of the Settlement's total value. LippSmith Dec. ¶ 15.

**Implementing the Notice Plan**

Since the Court made its Preliminary Approval Order, Class Counsel and Whirlpool

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

have worked with the Settlement Administrator to help ensure a smooth implementation of the Notice Plan and claims process.

A toll-free telephone line dedicated to this case was established on September 4, 2019. 9/9/19 Declaration of Settlement Administrator ("9/9/19 Admin. Dec."), Dkt. 130-1, ¶ 13. The line provides Class Members with answers to frequently asked questions, gives the option of requesting a Claim Form, and provides information about filing claims as well as important dates and deadlines for the Settlement. 9/9/19 Admin. Dec., ¶ 13.

On September 5, 2019, the Settlement Website (www.FreezerSettlement.com) was established, providing "general information about the Settlement, including answers to frequently asked questions, important dates and deadlines pertinent to this matter, and copies of important documents." *Id.* at ¶ 10. The Administrator established the online claim filing portal that same day, enabling Class Members to complete and submit Claim Forms through the Settlement Website. *Id.* at ¶ 11.

On September 5, 2019, 544,449 Email Notices were sent to Class Members for whom an email address was available, and Mailed Notice was sent to 543,714 Class Members for whom an email address was not available but for whom there was a postal address. *Id.* at ¶ 6. For the 111,799 Email Notices returned as undeliverable, the Administrator sent Mailed Notices. 9/9/19 Admin. Dec., ¶ 7; 11/8/19 Supplemental Declaration of Settlement Administrator ("11/8/19 Supp. Admin. Dec.") ¶ 3. As of November 6, 2019, the Settlement Administrator received 6,904 Mailed Notices returned with forwarding addresses, and those Mailed Notices were forwarded to the updated addresses. Supp. Admin. Dec. ¶ 3. Also as of November 6, 2019, 88,814 Mailed Notices were returned to the Settlement Administrator without forwarding address information, and Mailed Notices were re-mailed to 47,345 updated addresses identified through address verification searches. *Id.* ¶ 3.

On September 6, 2019, the Settlement Administrator caused the Publication Notice to be published in *People* magazine. 9/9/19 Admin. Dec., ¶ 8. Also on September 6, 2019, the Administrator implemented the internet media notice campaign, consisting of internet banner notices delivered through both desktop and mobile platforms targeted to people most likely to

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

be Class Members. *Id*. at ¶ 9. Combining the direct notice and consumer publication notice programs, "there was an approximate reach of 71.99% and an approximate average frequency of 2.99 times each." 11/8/19 Supp. Admin. Dec., ¶ 4.

**Class' Response to the Settlement**

There is significant interest and participation in the Settlement. As of November 6, 2019, the toll-free number received approximately 12,718 calls, totaling 65,593 minutes. 11/8/19 Supp. Admin Dec., ¶ 6. The Settlement Website has had 464,961 page views and 318,354 sessions, "which represents the number of individual sessions initiated by all users on the website." *Id*. at ¶ 5.

The deadline for Class Members to exclude themselves from the Settlement or object to the Settlement was October 21, 2019. Preliminary Approval Order § IV.B. As of November 6, 2019, the Administrator had received 199 timely requests for exclusion and had received, or been made aware of, 18 objections. *Id*. at ¶¶ 8, 9. Together, the objections and exclusions amount to just 0.01 percent of Class Refrigerators.

In addition, a total of 18,371 Claim Forms were received as of November 6, 2019. *Id*. at ¶ 10. The Administrator has yet to engage in de-duplication efforts for Claim Forms and has not yet adjudicated the validity of the Claim Forms submitted. *Id*.

## III.   SETTLEMENT TERMS

The Settlement ensures that consumers who received replacement parts but were not reimbursed for labor have the opportunity to recoup that cost, and the majority of Class Refrigerator owners can replace defective Drain Tubes without paying for this problematic component, offering what is essentially an extended warranty program for more than 2.1 million potential Class Members.

Prior to this Lawsuit, Whirlpool had a voluntary Special Project whereby it covered $15 replacement parts for certain Class Refrigerators that experienced a Freezing Event within five years of purchase as reported to Whirlpool by a Service Technician. This Special Project applied to 1,705,000 Class Refrigerators and provided replacement parts beyond the limited one-year warranty for certain Class Refrigerators, but it did not compensate most consumers for labor costs

associated with repairing or replacing their Drain Tubes, and Whirlpool was free to cancel the Special Project whenever it pleased.

The Settlement ensures the Special Project remains ongoing for multiple years going forward and expands its scope to include reimbursement for labor costs and an additional 472,502 Class Refrigerators. *See* 8/20/19 Supplemental Graham B. LippSmith Declaration (Dkt. 125-1) ("8/20/19 Supp. LippSmith Dec.") ¶¶ 2-3, 7-8. The Amended Settlement Agreement lists the model numbers of the refrigerators subject to the Settlement in two groups: Group A and Group B. Group A consists of the refrigerator models manufactured between 2009 and 2013 and which were originally listed as subject to the Settlement and which were already eligible for some redress as part of Whirlpool's Special Project. Class Members with refrigerator models in Group A will be eligible for benefits through December 31, 2021. Group B consists of refrigerator models recently added to the Settlement and manufactured between 2011 and 2018. Group B Class Refrigerators will now be eligible for replacement parts and labor costs as part of Whirlpool's Special Project through December 31, 2026. *Id.* at ¶ 7.

### A.   Benefits for Past Freezing Events

Class Members who experience a Freezing Event prior to the Notice Date of September 5, 2019 must submit a completed Claim Form within 154 days of the Preliminary Approval Order, or by January 22, 2020, with:

- Class Membership. A valid Class Refrigerator model and serial number combination.

- Proof of Purchase. Documentary proof of date of purchase, *e.g.*, purchase receipts, entries on credit card statements, and warranty registrations. If no such proof is available, then the claimant shall provide a claim-form declaration, under oath, that the claimant cannot locate sufficient documentary proof. Whirlpool will then attempt to determine the date of purchase by searching its own product registration data for claimants who provide this declaration.

- Freezing Event. Documentary proof that claimant experienced a Freezing Event, *e.g.,* service tickets, service estimates, and service receipts. If no such proof is

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

available, claimant shall provide a claim-form declaration, under oath, attesting that claimant experienced a Freezing Event within five years after purchase.

- <u>Paid Qualifying Repair</u>. Documentary proof that the claimant paid for repair of a Class Refrigerator necessitated by a Freezing Event and consisting of the replacement of a duckbill drain tube with the installation of a P-trap part (Whirlpool Part No. W10619951) by a Service Technician within five years after purchase, *e.g.*, service tickets, service receipts, copies of checks, and entries from credit card statements. If no such proof is available, the Settlement Administrator will analyze Whirlpool's warranty claims data to attempt to determine whether a Qualifying Repair was made (*e.g.*, if replacement P-trap part was provided or cost of replacement part reimbursed).

If a Class Member does not provide sufficient documentary proof or equivalent, pursuant to the Settlement terms summarized above, that person will not be entitled to compensation.

### B.   Reimbursement of Out-of-Pocket Expenses

Class Members satisfying the above requirements may receive up to $150 reimbursement for Paid Qualified Repairs incurred within five years of the Refrigerator purchase as follows:

- <u>1 – 3 Years After Purchase</u>. 100% Reimbursement for Paid Qualified Repairs.
- <u>Year 4 After Purchase</u>. 100% reimbursement for parts and 65% reimbursement for labor costs of Paid Qualified Repairs.
- <u>Year 5 After Purchase</u>. 100% reimbursement for parts and 50% reimbursement for labor costs of Paid Qualified Repairs.

### C.   Reduction for Previous Compensation by Whirlpool

A Class Member's compensation will be reduced if s/he previously received any form of compensation for the Freezing Event from Whirlpool such as those listed below. Depending on the form of compensation, such claimants' compensation will be reduced as follows by the:

- amount of any policy-adjust cash payment, cash refund, or other cash payment;

8

- specified dollar amount of any specified dollar-discount deducted from the price of any new refrigerator;
- dollar amount determined by applying the specified percentage to the regular, then-prevailing price of the new refrigerator for any specified percentage-discount deducted from the price of any new refrigerator; and
- dollar amount specified on any coupon given and redeemed toward purchase of a new refrigerator.

### D.    Benefits for Future Freezing Events

Generally, Class Members who experience a Freezing Event *on* or *after* the Notice Date are entitled to the same benefits available to claimants for Past Freezing Events. Such claimants will be directed to contact Whirlpool through a dedicated toll-free number no later than 90 days after first experiencing a Freezing Event to report it and request repair service. Whirlpool will schedule service with a Service Technician and pay parts and labor costs to repair the Freezing Event per the schedule described in § III.B *supra*. Any claimant who fails to notify Whirlpool of the Freezing Event via the toll-free number or fails to do so within 90 days of the Freezing Event will not be entitled to compensation.   Class Members making claims for Future Freezing Events must submit the same documentary proof of qualifying Class Refrigerator and purchase date, or declaration of inability to provide such proof to prompt a search of Whirlpool's product registration database, as Class Members who are making claims for Past Freezing Events.

## IV.    THE CLASS RESPONSE IS IN FAVOR OF THE SETTLEMENT

### A.    The Administrator Received More Than 18,000 Claims to Date

At less than half way through the claims process for past freezing events occurring before the Notice Date of September 5, 2019, 18,371 Claim Forms have been received. 11/8/19 Supp. Admin. Dec., ¶ 10. The deadline to submit claims for past freezing events is January 22, 2020, so Class Members have more than an additional two months in which to submit claims for Past Freezing Events. In addition, the claims period will continue through 2026 for Future Freezing Events. The Class' expert economist, Jason Bass, has taken the claims rate provided to him as of November 3, 2019 and averaged the weekly response rate, including the average

9

1   decline in submissions, and determined that an additional 20,618 claim forms can be expected.

2   Declaration of Jason Bass in Support of Motion for Final Approval ("Bass Dec.") ¶ 4. All

3   totaled, 38,700 claims are expected by the deadline to submit claims for Freezing Events

4   occurring prior to the Notice Date. This substantial participation in the Settlement demonstrates

5   that the Class is overall in favor of the Settlement, which is a factor in support of final approval.

6       **B.       The 18 Objections Should Be Overruled**

7       "In determining final approval of a class action settlement, the court considers

8   whether there are any objections to the proposed settlement and, if so, the nature of those

9   objections. The fact that there is some opposition does not necessitate disapproval of the

10  settlement; rather, the court must evaluate whether the objections indicate the settlement is

11  fundamentally unfair, inadequate, or unreasonable." *Zakskorn v. Am. Honda Motor Co.*, 2015

12  U.S. Dist. LEXIS 74550, at *11 (E.D. Cal. 2015), citing *Ko v. Natura Pet Products, Inc.*,

13  2012 U.S. Dist. LEXIS 128615, at *6 (N.D. Cal. Sept. 10, 2012). "An objector to a proposed

14  settlement agreement bears the burden of proving any assertions they raise challenging the

15  reasonableness of a class action settlement." *In re MagSafe Apple Power Adapter Litig.*, 2015

16  U.S. Dist. LEXIS 11353, at *10 (N.D. Cal. 2015), *citing United States v. State of Oregon*,

17  913 F.2d 576, 581 (9th Cir. 1990).

18      "It is established that the absence of a large number of objections to a proposed class

19  action settlement raises a strong presumption that the terms of a proposed class settlement

20  action are favorable to the class members." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036,

21  1043 (N.D. Cal. 2008) (internal quotation marks omitted). Where just a few class members

22  object, the "Court 'may appropriately infer that a class settlement is fair, adequate, and

23  reasonable…'" *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477, at *38

24  (N.D. Cal. Apr. 22, 2010), *quoting Create-A-Card, Inc. v. Intuit, Inc.*, 2009 U.S. Dist. LEXIS

25  93989, at *15 (N.D. Cal. 2009); *see also, e.g.*, *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577

26  (9th Cir. 2004) (settlement affirmed where 90,000 notices sent and 45 objections received).

27  Where, as here, the Settlement provides an opt-out remedy, it "is sufficient to protect class

28  members who are unhappy with the negotiated class action settlement terms." *Eisen v. Porsche*

10

1   *Cars N. Am., Inc.*, 2014 U.S. Dist. LEXIS 14301, at *20 (C.D. Cal. Jan. 30, 2014)

2     A total of 18 objections have been received, the vast majority of which fall into one of

3   the following categories: (1) objecting that the Settlement provides benefits only for freezing

4   events occurring up to five years from the date of purchase; (2) objecting to a lack of

5   reimbursement for purchases of extended warranty coverage; and (3) objecting that the

6   Settlement provides insufficient compensation. *See* Supp. Admin. Dec., Ex. B. No objector filed

7   a Notice of Intent to Appear, which is required by the Notice Plan, and none of the objectors

8   appears to be represented by counsel. LippSmith Dec. ¶ 7.

9      **1.**  **Settlement Benefits Are Substantial Even Though They Are Limited**

10       **to Freezing Events Occurring within Five Years of Purchase**.

11    "The Ninth Circuit rejected the contention that a settlement is not fair if it 'could

12  have been better.' 'Settlement is the offspring of compromise; the question [the Court]

13  address[es] is not whether the final product could be prettier, smarter or snazzier, but whether

14  it is fair, adequate and free from collusion.'" *Sadowska v. Volkswagen Group of Am., Inc.*,

15  2013 U.S. Dist. LEXIS 188582, at *15-16 (C.D. Cal. Sept. 25, 2013), *quoting Hanlon v.*

16  *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In addition, contentions that all

17  members of a class should receive the same or full reimbursement benefits "fail to consider

18  that a settlement is a compromise of disputed claims." *Eisen*, 2014 U.S. Dist. LEXIS at *16-

19  17, *citing*, *e.g.*, *Petrovic v. Amoco Oil Corp.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("[A]lmost

20  every settlement will involve different awards for various class members."); *Henderson v.*

21  *Volvo Cars of N. Am. LLC*, 2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013) (overruling

22  objections requesting full reimbursement for transmission replacement costs where class

23  settlement provided either 50% or 25% to certified pre-owned and used vehicle owners). "It

24  is appropriate for the settling parties to balance and evaluate settlement terms based on their

25  reasonable view of the issues in the case and 'there is no rule that settlements must benefit all

26  class members equally.'" *Eisen*, 2014 U.S. Dist. LEXIS at *17, *quoting Petrovic*, 200 F.3d at

27  1152.

28

11

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT**

1    Nine of the 18 objectors are dissatisfied because their refrigerators are beyond the

2   five-year eligibility requirement for Settlement Benefits. Supp. Admin. Dec., Ex. B

3   (Clapsadle, Banach, Gorka, Fernandes, Blachowicz, LaRosa, Straka, Geary, and

4   Svoboda/Yatsevitch). This limit to Settlement Benefits reflects a number of considerations,

5   including the fact that Plaintiff's claim for breach of implied warranty is subject to a four-

6   year statute of limitations, tolled only by factual allegations of fraudulent concealment. Order

7   Granting in Part and Denying in Part Defendant's Motion to Dismiss, Dkt. 64, at pp. 7-8. In

8   addition, the Settlement provides coverage that exceeds the one-year warranty Whirlpool

9   provided with the Class Refrigerators. *See Eisen*, 2014 U.S. Dist. LEXIS at *22 (finding it

10   "significant" that the settlement provided "extended warranty coverage that exceeded the

11   warranties provided…").

12         **2.    A Fair and Sizeable Settlement Should Not Be Set Aside Because It**

13                **Does Not Fully Compensate Every Loss By Every Class Member.**

14    There are five objectors who contend that the reimbursement benefits offered in the

15   Settlement are insufficient, including one who objects because there is no compensation to

16   Class Members who fixed the problem themselves. Supp. Admin. Dec., Ex. B (Frame,

17   Chasse, Nugent, Stevens, and Pisacano). "[A] class settlement is not capable of resolving

18   every possible consequential damages claim a Class Member might wish to pursue. It would

19   not be fair to the class as a whole to set aside an otherwise fair settlement because it does not

20   address unique and difficult to prove hardships suffered by only a few members of the class."

21   *Mendoza v. Hyundai Motor Co.*, 2017 U.S. Dist. LEXIS 9129, at *27 (N.D. Cal. 2017), *citing*

22   *Hendricks v. StarKist Co.*, 2016 U.S. Dist. LEXIS 134872, at *6 (N.D. Cal. Sept. 29, 2016).

23    David Frame requests that the Settlement "provide $50 for the inconvenience, time

24   and effort to those who did the repair on their own." Supp. Admin. Dec., Ex. B. Mr. Frame

25   goes on to note, "there would be no documentary proof since there were no out-of-pocket

26   expenses." *Id*. A settlement that provides reimbursement to consumers who did suffer out-of-

27   pocket expenses should not be derailed or delayed for the outlier objector who did not incur

28

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

1  such expenses. In addition, Mr. Frame's requested compensation is submitted without any

2  rationale or basis that would justify the requested $50.

3     Mark and Becky Chasse want the Settlement "to broader encompass the likely range

4  of damages" resulting from the drain tube defect. Supp. Admin. Dec., Ex. B. The other

5  damages the Chasses list are "minor flooding in [their] kitchen, intense fan noise […], caused

6  [the] refrigerator/fan to seize up and stop working," that they had to defrost the refrigerator,

7  the cost of ice blocks to keep food cold in coolers, and food spoiled because of the inoperable

8  refrigerator. *Id*. As much as Plaintiff and Class Counsel would have been delighted to

9  achieve a settlement that compensated every Class Member for every consequential damage

10  even tangentially caused by the defective drain tubes, the "Settlement is the offspring of

11  compromise" that remains "fair, adequate, and free from collusion." *Hanlon*, 150 F.3d at

12  1027. Moreover, the Settlement does not release claims for property damage caused to

13  anything other than the Class Refrigerators, so the Chasses are free to pursue any such claims

14  against Whirlpool. First Amended Settlement Agreement and Release ("Amended SAR"),

15  Dkt. 125-1, § IX.B.

16     Frank Nugent is similarly dissatisfied with the Settlement amount, requesting "due

17  consideration" that would "allow [him] to replace this appliance with a new one of another

18  model and manufacturer." Supp. Admin. Dec., Ex. B. Rebecca Jill Stevens also requests "a

19  new appliance that works, free from any defects or be able to have the problem taken care of

20  at no cost," contending that the $150 reimbursement is insufficient because a "service call" is

21  $100. *Id*. Ann Pisacano's repair costs totaled $255.43, so she also objects to the sufficiency

22  of the Settlement benefits, wanting reimbursement for the total cost of her repair. *Id*.

23  However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the

24  potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for*

25  *Justice v. Civil Service Com.*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Kacsuto v. Lenovo*

26  *(United States) Inc.*, 2014 U.S. Dist. LEXIS 174510, at *13 (C.D. Cal. 2014).

27  ///

28  ///

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

### 3. Reimbursing Class Members Previously Compensated By Extended Warranties Would Result in a Windfall for Them.

Two objections are made to the Settlement's lack of reimbursement benefits for the purchase of extended warranty coverage. Supp. Admin. Dec., Ex. B (Diaz and McCay). Such objections have been overruled where the settlement reimburses for out-of-pocket expenses incurred, where the extended coverage largely covered the repair, and where the class member was not required to purchase the extended coverage. *Sadowska*, 2013 U.S. Dist. LEXIS at *17-18. Here, no one claims to have been required to purchase extended warranty coverage, and each of these objectors has had repairs made for freezing events that were covered under their warranty coverage. *See* Supp. Admin. Dec., Ex. B. In addition, neither objector claims to have suffered any out-of-pocket expenses other than the cost of extended warranty coverage, and "it is not unfair to […] limit recovery to actual net out-of-pocket costs." *Eisen*, 2014 U.S. Dist. LEXIS at *18-19, 25.

Moreover, extended warranty coverage would not be limited to coverage for the defective drain tube problem alleged in this Lawsuit, so reimbursing Class Members for the cost of purchasing extended warranties would provide coverage for repairs necessitated by other problems in the Class Refrigerators that were not litigated and are not addressed in the Settlement. Because these extended warranties are much broader than the extended warranty negotiated under the Settlement, there is other, significant value in the purchased warranties. *See Mendoza*, 2017 U.S. Dist. LEXIS at *26 (overruling objections claiming the settlement should reimburse the cost of previously purchased extended warranties). Indeed, Nancy McCay acknowledges that she purchased an extended warranty "*mostly* due to the freeze-up problem as well [as] the other problems mentioned…" Supp. Admin. Dec., Ex. B.

### 4. The Remaining Objections Should Be Overruled.

Mr. Thomas Kelley objected on the basis of "timely notice" because he did not receive the Notice by September 5, 2019. Supp. Admin. Dec., Ex. B. Just like the rest of the Class, however, Mr. Kelley has until January 22, 2020 to make a claim for a Past Freezing Event, and he received adequate notice of the Settlement. *See* Preliminary Approval Order § III.B. Because

14

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1   Mr. Kelley's objection is the only one of its kind, it is not typical of the Class. Further, the

2   objection seems to be a misunderstanding resolved by the terms of the Settlement. *See*

3   *Mendoza*, 2017 U.S. Dist. LEXIS at *28-29. Finally, Mr. Kelley does not make any argument

4   that the Settlement itself is inadequate, so his objection should be overruled.

5           Lastly, Catherine Sheveland objects to the Settlement, making nine criticisms of the

6   Settlement and Whirlpool, each of which lacks merit and does not seriously challenge the

7   fairness and adequacy of the Settlement. Supp. Admin. Dec., Ex. B. The majority of Ms.

8   Sheveland's objections have to do with the sufficiency of the settlement: reimbursement

9   decreases with the age of the refrigerator; no consideration for people who fixed the problem

10  themselves; and no consideration for putting up with the problem and the "havoc" it caused. *Id*.

11  As discussed in Sections IV.B.1-2, *supra*, the five-year limitation is reasonable, especially in

12  light of statute of limitation considerations, just as it is reasonable to provide compensation only

13  to those who incurred out-of-pocket expenses related to the defect.

14          In addition, Ms. Shreveland objects that the "settlement assumes households would have

15  saved paper documents of purchase and repair costs." *Id*. Ms. Shreveland is incorrect. First, the

16  Settlement provides that a Class Member who is unable to provide documentary proof of

17  purchase submits a declaration that the claimant cannot locate sufficient documentary proof,

18  "the Settlement Administrator will then search Whirlpool's product registration database to

19  attempt to determine the date of purchase." Amended SAR, Dkt. 125-1, § IV.B.1.e. Second, if

20  no documentary proof of a Freezing Event is available, a Class Member can provide a

21  declaration, under oath, "that the claimant experienced a Freezing Event." *Id*. at § IV.B.1.b.

22  Third, if no documentary proof of a Qualifying Repair is available, "the Settlement

23  Administrator will analyze Whirlpool's warranty claims database to attempt to determine

24  whether the claimant received a Qualifying Repair." *Id*. at § IV.B.1.c. Finally, there are a

25  number of acceptable documentary proofs of purchase and repairs, including entries from credit

26  card statements, which often remain available through electronic sources online. *See id*. at §

27  IV.1. Because Ms. Sheveland's objection is simply inaccurate, it should be overruled.

28          Just about all of Ms. Sheveland's other criticisms do not contend that the Settlement,

1  itself, is inadequate or unfair. Ms. Sheveland complains that Whirlpool did not send a recall

2  notice, that the "majority of purchasers would not have contacted Whirlpool" because of

3  diagnostic and repair costs, and that "Whirlpool appears to have purposely waited until it was

4  too late for households to resolve the problem." Supp. Admin. Dec., Ex. B. These objections

5  should be overruled because they are speculative of Class Member conduct and Whirlpool's

6  business practices and are not as to the fairness or adequacy of the Settlement.

7      **C.**     <u>**Nobody Opposed or Objected to the Requested Attorney Fees, Costs**</u>

8              <u>**Reimbursement, or Incentive Award**</u>

9      The Postcard Notice, Publication Notice, and Long-Form Notice each informed Class

10  Members that Class Counsel is asking the Court to award up to $1,850,000 for attorney fees and

11  reimbursement of the litigation expenses and costs incurred or advanced by Class Counsel.

12  Amended SAR, Exs. 3, 6, 7. None of the very few objections were as to the attorney fee award

13  and costs reimbursement sought by Class Counsel. *See* LippSmith Dec. ¶¶ 7, 9. Nor has anyone

14  objected to the $5,000 Service Award proposed for Julie Corzine as the Class Representative, of

15  which the Class was also notified in the Publication and Long-Form Notices. *Id*.; Amended

16  SAR, Exs. 3, 6. The lack of any objection to these proposed awards raises a strong presumption

17  that the Class is in favor of these awards and that they should be approved as fair, reasonable,

18  and justified.

19  **V.**     <u>**GRANTING FINAL APPROVAL IS APPROPRIATE**</u>

20      **A.**     <u>**Legal Standards**</u>

21      "A court must engage in a two-step process to approve a proposed class action

22  settlement. First, the court must determine whether the proposed settlement deserves

23  preliminary approval." *Sadowska*, 2013 U.S. Dist. LEXIS at *7. Here, the Court has completed

24  this first step and granted preliminary approval of the Settlement. Preliminary Approval Order,

25  Dkt. 126. "Second, after notice is given to class members, a court must determine whether final

26  approval is warranted." *Sadowska*, 2013 U.S. Dist. LEXIS at *8. Notice to the Class has also

27  been completed, so the Court can move on to making its determinations for final approval.

28      In making this determination, the court may consider any of all of the following

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

factors (the "*Churchill factors*"): (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Id.*

## B.   The Court Should Grant Final Approval of the Settlement

### 1.   The Strength of Plaintiff's Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff and Class Counsel are confident that they would ultimately succeed at trial, especially in light of information obtained through discovery that included product redesign documents, product testing documents, and investigation worksheets, but doing so would not be without significant challenges. Early Court rulings dismissing a significant number of Plaintiff's claims showed that favorable results were far from guaranteed. Plaintiff also faced the task of proving fraudulent concealment before the substance and merits of her claims could be considered. In addition, Plaintiff's case would have likely faced expert disputes as to the claimed defect. Finally, Plaintiff had yet to file a motion for class certification, so there was a risk that the class would not be certified. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 888 (C.D. Cal. 2016); *Gardner v. GC Servs., LP*, 2012 U.S. Dist. LEXIS 47034, *4 (S.D. Cal. 2012). Weighing the significant burden and risks of the case moving forward, including class certification, summary judgment and trial, against the significant benefits offered through the Settlement supports final approval of the Settlement.

### 2.   The Risk of Maintaining Class Action Status Through Trial

As noted above, Plaintiff had yet to file a motion for class certification, so there was a risk that the class would not ever have been certified. *Chambers*, 214 F. Supp. 3d at 888 ("Because plaintiffs had not yet filed a motion for class certification, there was a risk that the class would not be certified."). Just as in *Chambers*, this risk is magnified "because nationwide class certification under California law or the laws of multiple states is rare." *Id.*, *citing*, *e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 585 (9th Cir. 2012). Such risks weigh in favor of

17

1  approving the Settlement. *See id.*

2  ### 3.      The Amount Offered in Settlement

3  The value of the Settlement benefits to the Class is sizeable, ranging from at least

4  $12,949,789 to $ 17,826,684. Supplemental Declaration of Jason Bass ("Supp. Bass Dec.") ¶ 6.

5  The Class' expert economist provides this range of value that the Settlement confers to Class

6  Members, conservatively based on the rate of warranty claims made directly to Whirlpool prior

7  to this Lawsuit and the claims made to date since the Notice Date of September 5, 2019. Supp.

8  Bass Dec. ¶¶ 4-12. The floor market value of the Settlement benefits is $12,949,789,

9  representing the fair market value of the retroactive and extended warranty offered and realized

10  by Class Members immediately upon final approval of the Settlement. *Id.* ¶¶ 11-12. The higher

11  valuation of the Settlement benefits is $17,826,684 and is based on measuring the likely cost to

12  Whirlpool for paying claims. *Id.* ¶¶ 4-6.

13  These Settlement benefit calculations do not account for the value of recovering attorney

14  fees, costs, and the incentive award, or for the hundreds of thousands of dollars Whirlpool is

15  spending to provide Notice to the Class, all of which are valuable benefits to the Class. Class

16  Counsel is informed that since September 4, 2019, the Administrator's implementation of the

17  Notice Plan has cost $862,094.54. LippSmith Dec. ¶ 3. The Administrator has also informed

18  Class Counsel that it estimates its future work on the Settlement to cost from $150,000 to

19  $200,000 more. *Id.* The Settlement provides that Whirlpool is to pay *all* of these up to

20  $1,062,094.54 in fees for the Administrator at no cost to the Class Members. *Id.* Thus, without

21  any cap to ever limit the Settlement benefits over time, the *minimum* Settlement value ranges

22  from $15,866,883.54 (present fair market value of extended warranty benefit +

23  notice/administration costs + attorney fees and costs reimbursement + incentive award) to

24  $20,743,778.54 (estimated cost of claims over time + notice/administration costs + attorney fees

25  and costs reimbursement + incentive award). *Id.* The value conferred by this Settlement is

26  substantial.

27  ### 4.      The Extent of Discovery Completed and the Stage of the Proceedings

28  "A settlement following sufficient discovery and genuine arms-length negotiation is

18

presumed fair." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). As the Court has previously found, "the Parties have reached the Settlement after extensive motion practice, exchange of initial disclosures, the collection and analysis of hundreds of thousands of pages of documents by Defendant, interviews of clients and client employees, consultation with experts, and engaging in extensive arms-length negotiations over the course of six months…" Preliminary Approval Order, Dkt. 126, § II.C.

At this stage of the proceedings, Class Counsel had sufficient information to determine the strength of Plaintiff's case and make informed decisions regarding a fair and adequate settlement. LippSmith Dec. ¶ 8; 7/8/19 LippSmith Dec., Dkt. 113-1, ¶¶ 12, 17. This factor, therefore, supports final approval of the Settlement.

## 5.    The Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (internal quotation marks and citation omitted). "Class Counsel is experienced in prosecuting complex class-action litigation" and have been deemed competent to represent the Class. Preliminary Approval Order, §§ I.A.5, I.C.

In the initial phases of settlement negotiations, Class Counsel certainly attempted to secure 100% relief for owners of 100% of the freezers impacted by this Settlement. LippSmith Dec. ¶ 8. However, it became clear in the negotiation process that Whirlpool—like pretty much any party in litigation—was unwilling to resolve this matter by settling for 100% relief for 100% of those potentially impacted. *Id*. Class Counsel worked diligently in the settlement to secure what is believed to be the maximum benefits from Whirlpool for the Class given that settlement almost always entails some compromise, the then-current claims at issue and challenges faced going forward, procedural posture of the case, and substantial information obtained and evaluated to date. *Id*. Based on Class Counsel's extensive efforts, experience, qualifications, and knowledge, and understanding of all of the issues presented over the many

19

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

years we pursued this case, Class Counsel believe that the Settlement—including its provision of substantial benefits for years to come, the robust Notice Plan and administration, attorney fees, costs reimbursement, and a modest incentive award—is indisputably fair, reasonable, adequate, and far exceeds the standards for granting final approval of its terms. *Id*. This factor provides further support for final approval of the Settlement.

### 6.        The Presence of a Governmental Participant

The Lawsuit does not concern any government agency, but the Administrator notified the Attorney General of the United States and Attorneys General of each State about the Settlement, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, on July 18, 2019, and a supplemental CAFA Notice was mailed on August 30, 2019 after the parties amended the Settlement to cover an additional 472,502 refrigerator freezer models and after the Court granted preliminary approval of the Settlement. Admin. Dec., Dkt. 130-1, ¶¶ 4-5. "An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)." The Administrator's service of its July 18, 2019 CAFA notice on the appropriate Federal and State officials was accomplished 126 days prior to the Fairness Hearing and was, therefore, timely. *Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*, 2011 U.S. Dist. LEXIS 21824, at *21-22 (S.D. Cal. 2011) (granting final approval based on dates of two earlier CAFA notices as opposed to the final supplemental CAFA notice). To date, the attorneys general have not raised concerns about the Settlement or submitted any objections.

### 7.        The Reaction of the Class to the Settlement

As is more fully discussed in Section V, *supra*, the Class' response to the Settlement has been overwhelmingly positive. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1043 (internal quotation marks omitted). In addition, "the fact that a potential Settlement Class Member chooses to opt out does not necessarily indicate that he or she finds

20

1  the Settlement objectionable." *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS

2  49477, at *40 (N.D. Cal. April 22, 2010).

3        Direct Notice of the Settlement was sent to 1,088,163 Class Members, but only 18 Class

4  Members objected, and 199 submitted timely opt-out requests. 9/9/19 Admin. Dec. ¶ 6; Supp.

5  Admin. Dec. ¶¶ 8, 9. These opt-outs account for less than 0.016% of the Class, and objectors

6  account for less than 0.0014% of the Class Members who were sent direct notice of the

7  Settlement. In contrast, the Settlement Administrator has received more than 18,000 claim

8  forms, and qualifying Class Members may submit requests for and receive benefits through

9  2026. The significant number of Class Members who want to participate in the Settlement, the

10  very small number of opt-outs, and the miniscule number of objections demonstrate how well

11  the Settlement has been received by the Class. This factor favors final approval of the

12  Settlement.

13  **VI.    CONCLUSION**

14        Based on the foregoing and any additional arguments offered at the Final

15  Fairness Hearing, the Class respectfully requests that the Court grant final approval of the

16  Settlement. The Class also respectfully requests that the Court award it the maximum amount of

17  attorney fees, costs reimbursement, and Service Award provided in the Settlement, now updated

18  to be (1) $1,823,394.75 in attorney fees to Class Counsel; (2) $26,605.25 in costs

19  reimbursements to Class Counsel; and (3) $5,000 to the Class Representative. To accomplish

20  this, the Class respectfully requests that the Court enter the [Proposed] Order Granting Final

21  Approval and [Proposed] Final Judgment filed herewith.

22

23  Dated:  November 8, 2019          KASDAN LIPPSMITH WEBER TURNER LLP

24                                    By:      */s/ Graham B. LippSmith*

25                                        Kenneth S. Kasdan
                                          Graham B. LippSmith

26                                        Celene Chan Andrews

27                                        Jaclyn L. Anderson
                                          Frank A. Perez

28                                        *Attorneys for Plaintiff and the Class*

21

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on November 8, 2019, I electronically filed THE CLASS' NOTICE

4   OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION

5   SETTLEMENT with the Clerk of the Court, using the CM/ECF system, which will send

6   notification of such filing to the counsel of record in this matter who are registered on the

7   CM/ECF system to receive service.

8

9                                          */s/ Graham B. LippSmith*
                                          Graham B. LippSmith

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THE CLASS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**