**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JULIE CORZINE, | Case No. 15-cv-05764-BLF |
| Plaintiff, | **ORDER GRANTING (1) CLASS'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2) CLASS'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD** |
| v. | |
| WHIRLPOOL CORPORATION, | |
| Defendant. | [Re: ECF 129; 131] |

Plaintiff Julie Corzine ("Plaintiff") and Defendant Whirlpool Corporation ("Whirlpool" or "Defendant") have entered into a Class Action Settlement Agreement and Release of Claims ("Settlement Agreement" or "Settlement") regarding a defect in certain Whirlpool-manufactured refrigerators.

Two motions are before the Court: (1) Class's Motion for Final Approval of Settlement, (Appr. Mot., ECF 131) and (2) Class's Motion for Attorneys' Fees, Costs Reimbursement, and Service Award (Fees Mot., ECF 129). On November 22, 2019, the Court heard oral arguments on both motions (the "Hearing"). For the reasons discussed below and those stated on the record at the Hearing, the motions are GRANTED.

## I. BACKGROUND

On November 13, 2015, Plaintiff filed this class action in Santa Clara Superior Court ("Lawsuit"). ECF 1-1, 1-2. The Lawsuit alleges a defect in certain Whirlpool-manufactured refrigerators; namely, that the drain tubes become blocked with ice, overflow with water, and in some cases, leak from the bottom of refrigerators. Third Am. Compl. ("TAC") ¶¶ 25-27. Whirlpool designed the drain tubes to channel defrosted water from the freezer into a drain pan at the base of

Class Refrigerators[1] as part of the daily defrost cycle. *Id.* ¶ 25. But the drain tubes feature a rubber grommet component resembling a duckbill that is prone to clogging with debris, which dams the flow of defrosted water from the freezer. *Id.* ¶ 26. Trapped water then freezes, forming a solid plug of ice. *Id.* Over time, large quantities of water and ice accumulate, eventually resulting in water leaking out of the freezer, into the refrigerator compartment, and, at times, onto the ground near the refrigerator. *Id.* ¶¶ 26-27.

After several years of litigation, on August 21, 2019, this Court entered an Order Granting Joint Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), which provisionally certified a nationwide settlement class ("Settlement Class") and directed notice of the Settlement. Prelim. Order, ECF 126. The preliminary Settlement Class is defined as follows:

> All persons in the United States and its territories who (a) purchased a new Class Refrigerator, as defined in the Settlement Agreement, (b) acquired a Class Refrigerator as part of the purchase or remodel of a home, or (c) received as a gift, from a donor meeting those requirements, a new Class Refrigerator not used by the donor or by anyone else after the donor purchased the Class Refrigerator and before the donor gave the Class Refrigerator to the Class Member.

Prelim. Order ¶ I.B. Excluded from the Settlement Class are:

> (a) officers, directors, and employees of Whirlpool or its parents or subsidiaries, (b) insurers of Class Members, (c) subrogees or all entities claiming to be subrogated to the rights of a Class Refrigerator purchaser, a Class Refrigerator owner, or a Class Member, and (d) issuers or providers of extended warranties or service contracts for Class Refrigerators.

*Id.*

The Court made several specific decisions relating to the Settlement Class. First, the Court appointed Graham B. LippSmith and Jaclyn L. Anderson of the law firm Kasdan LippSmith Weber Turner LLP as Class Counsel for the Settlement Class. Prelim. Order ¶ I.C. Second, the Court appointed Plaintiff, Julie Corzine, as the representative of the Settlement Class ("Class Representative"). *Id.* Third, the Court appointed Angeion Group as Settlement Administrator

---

[1] Unless otherwise noted, all defined terms in this Order (*i.e.*, all defined capitalized words or phrases) have the same definitions and meanings as those set forth in the First Amended Settlement Agreement and Release of Claims (ECF 125-1, Exhibit A).

("Administrator"). *Id.* ¶ III.E.4.

## II.    THE SETTLEMENT AGREEMENT

The Settlement Agreement effectively creates an extended warranty program for the Class Members. Prior to this lawsuit, Whirlpool had implemented a voluntary Special Project whereby it provided $15 replacement parts for certain Class Refrigerators if they experienced a Freezing Event[2] within five years of purchase as reported to Whirlpool by a Service Technician. Appr. Mot. at 6. This Special Project provided replacement parts beyond the limited one-year warranty for certain Class Refrigerators, but it did not compensate most consumers for labor costs associated with repairing or replacing their drain tubes. *Id.* at 6-7. Under the Settlement Agreement, Whirlpool agrees to keep the Special Project open for multiple years going forward and to expand its scope to include reimbursement for labor costs and additional Class Refrigerators. *Id.* at 7; ECF 125-1 ¶¶ 7-10.

The terms of the Settlement Agreement provide that Class Members who experience a Freezing Event prior to September 5, 2019 (the "Notice Date") must submit a completed Claim Form, which includes (1) a valid Class Refrigerator model and serial number combination, (2) proof of purchase, (3) proof that claimant experienced a Freezing Event, and (4) poof that claimant paid for repair of a Class Refrigerator necessitated by a Freezing Event. First Amended Class Action Settlement Agreement and Release of Claims ("Am. Settlement") § IV.B.1, ECF 125-1, Exh. A.

Class Members satisfying the above requirements may receive up to $150 reimbursement for Paid Qualified Repairs[3] incurred within five years of the Refrigerator purchase as follows:

- 1 – 3 Years after Purchase: 100% Reimbursement for Paid Qualified Repairs.

- Year 4 after Purchase: 100% reimbursement for parts and 65% reimbursement for labor costs of Paid Qualified Repairs.

- Year 5 after Purchase: 100% reimbursement for parts and 50% reimbursement for labor

---

[2] "Freezing Event" means the buildup of ice due to a freezer drain obstruction on the floor of a Class Refrigerator's freezer within five years of purchase, which may have resulted in the leakage of water from the bottom of the freezer door. Am. Settlement § I.T, ECF 125-1, Exh. A.

[3] "Paid Qualifying Repair" means a Qualifying Repair for which the Class Member paid some amount out of pocket, *e.g.*, for parts or labor, or both. Am. Settlement § I.X, ECF 125-1, Exh. A.

costs of Paid Qualified Repairs.

Am. Settlement § IV.B.2.  A Class Member's compensation will be reduced if the Class Member previously received any form of compensation for the Freezing Event from Whirlpool.  *Id.* § IV.B.4.

Class Members who experience a Freezing Event on or after the Notice Date are entitled to the same benefits available to claimants for past Freezing Events and will be directed to contact Whirlpool through a dedicated toll-free number no later than 90 days after first experiencing a Freezing Event to report the Freezing Event and request repair service.  Am. Settlement § IV.C.

## III.   NOTICE PLAN

In its Preliminary Approval Order, the Court approved (1) the form and content of settlement notices to be mailed, emailed, and published to members of the Settlement Class (the "Settlement Notices"); (2) the form and content of the Claim Form; (3) the content of the Settlement Website, with the FAQ and other information and documents that the Parties jointly agreed to post concerning the nature of the Lawsuit and status of the Settlement; and (4) the plan specified in the Settlement Agreement for distributing and publishing the Settlement Notices.  Prelim. Order § III.E.  The Court found that Settlement Notices, Claim Form, and Settlement Website fairly, accurately, and reasonably informed members of the Settlement Class of (1) appropriate information about the nature of this Lawsuit and the essential terms of the Settlement Agreement; (2) appropriate information about and means for obtaining additional information regarding this Lawsuit and the Settlement Agreement; (3) appropriate information about and means for obtaining and submitting a Claim Form; (4) appropriate information about and means for submitting a Claim Form for benefits under the Settlement; (5) appropriate information about how to challenge or exclude themselves from the Settlement, if they wish to do so; (6) appropriate information about the consequences of failing to submit a Claim Form or failing to comply with the prescribed procedures and deadline for opting out of, or objecting to, the Settlement.  *Id.* §§ III.C-D.

## IV.   MOTION FOR FINAL APPROVAL OF SETTLEMENT

### A.  The Class Meets the Requirements for Certification under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

> (1)     the class is so numerous that joinder of all members is

impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)      the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. Plaintiff seeks certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also* ECF 113 at 19-22.

The Court concluded that these requirements were satisfied when it granted preliminary approval of the class action settlement. *See* Prelim. Order § 1. The Court is not aware of any new facts which would alter that conclusion, and thus, does not repeat its analysis here. For the reasons stated in the Preliminary Approval Order, the Court concludes that the requirements of Rule 23 are met and that certification of the class for settlement purposes is appropriate.

**B. Legal Standard**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). District courts "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane*, 696 F.3d at 818-19. "[A] district

5

court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* at 819 (internal quotation marks and citation omitted). In making that determination, district courts are guided by several factors articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp* ("*Hanlon* factors"). *Id.* Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).

### C. Notice was Adequate

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025. For the Court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court previously approved Plaintiff's plan for providing notice to the class ("Notice Plan") when it granted preliminary approval of the class action settlement. *See* Prelim. Order. Since then, Class Counsel and Whirlpool have worked with the Settlement Administrator to implement the Notice Plan and have instituted a claims process. Appr. Mot. at 4-5.

A toll-free telephone line dedicated to this case was established on September 4, 2019. Declaration of Settlement Administrator ("Admin. Decl.") ¶ 13, Dkt. 130-1. The line provides Class Members with answers to frequently asked questions, gives the option of requesting a Claim Form, and provides information about filing claims as well as important dates and deadlines for the Settlement. *Id*.

On September 5, 2019, the Settlement Website (www.FreezerSettlement.com) was

established, providing "general information about the Settlement, including answers to frequently asked questions, important dates and deadlines pertinent to this matter, and copies of important documents." Admin. Decl. ¶ 10.  On the same day, the Administrator established the online claim filing portal, enabling Class Members to complete and submit Claim Forms through the Settlement Website.  *Id*. at ¶ 11.

On September 5, 2019, 544,449 email notices were sent to Class Members for whom an email address was available, and mailed notices were sent to 543,714 Class Members for whom a postal address (but not an email address) was available.  Admin. Decl. ¶ 6.   For the 111,799 email notices returned as undeliverable, the Administrator sent mailed notices.  *Id.* ¶ 7; Supplemental Declaration of Settlement Administrator ("Supp. Admin. Decl.") ¶ 3, ECF 131-3.  As of November 6, 2019, the Administrator received 6,904 mailed notices returned with forwarding addresses, and those mailed notices were forwarded to the updated addresses. Supp. Admin. Decl. ¶ 3. Also as of November 6, 2019, 88,814 mailed notices were returned to the Administrator without forwarding address information, and mailed notices were re-mailed to 47,345 updated addresses identified through address verification searches.  *Id.* ¶ 3.

On September 6, 2019, the Administrator caused the Publication Notice to be published in People magazine.  Admin. Decl. ¶ 8.  On the same day, the Administrator implemented an internet media notice campaign, consisting of internet banner notices delivered through both desktop and mobile platforms targeted to people most likely to be Class Members.  *Id.* ¶ 9. Combining the direct notice and consumer publication notice programs, "there was an approximate reach of 71.99% and an approximate average frequency of 2.99 times each."  Supp. Admin. Decl. ¶ 4.

As of November 6, 2019, the toll-free number received approximately 12,718 calls, totaling 65,593 minutes. Supp. Admin Decl. ¶ 6.  As of the same date, the Settlement Website has had 464,961 page views and 318,354 sessions, "which represents the number of individual sessions initiated by all users on the website."  *Id.* ¶ 5.

The deadline for Class Members to exclude themselves from the Settlement or object to the Settlement was October 21, 2019.  Prelim. Order § IV.B.  As of November 6, 2019, the Administrator had received 199 timely requests for exclusion and had received, or been made aware

of, 18 objections. Supp. Admin. Decl. ¶¶ 8, 9. The objections and exclusions collectively amount to 0.01 percent of Class Refrigerators. Appr. Mot. at 6. In addition, a total of 18,371 Claim Forms (not de-duplicated or validated by the Administrator) were received as of November 6, 2019. Supp. Admin. Decl. ¶ 10.

Based on the foregoing, Court is satisfied that the class members were provided with adequate notice.

### D. The Settlement is Fundamentally Fair, Adequate, and Reasonable

The Court, guided by the *Hanlon* factors, has evaluated the Settlement and concludes that the Settlement is fundamentally fair, adequate and reasonable.

First and importantly, there is no indication of collusion because the settlement is a result of post-discovery, arms-length negotiations between experienced counsel with the aid of two respected mediators. *See* ECF 113-1 ¶¶ 18-19. As the Court explained in its Preliminary Approval Order, the parties have reached the Settlement Agreement "after extensive motion practice, exchange of initial disclosures, the collection and analysis of hundreds of thousands of pages of documents by Defendant, interviews of clients and client employees, consultation with experts, and engaging in extensive arms-length negotiations over the course of six months…" Prelim. Order § II.C. "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting *Manuel for Complex Litigation* (Third) § 30.42 (1995)).

Second, experienced counsel's view of the settlement weighs in favor of approval. In its Preliminary Approval Order, the Court found that Class Counsel is experienced in prosecuting complex class-action litigation, and Plaintiff and Class Counsel have no interest that conflicts with, or is adverse to, the interests of the Settlement Class. Prelim. Order § I.A.5. No evidence to the contrary has emerged. According to Class Counsel "the Settlement—including its provision of substantial benefits for years to come, the robust Notice Plan and administration, attorney fees, costs reimbursement, and a modest incentive award—is indisputably fair, reasonable, adequate, and far exceeds the standards for granting final approval of its terms." Declaration of Graham B. LippSmith

("LippSmith Decl.") ¶ 8, ECF 131-1.

Third, the risks, expense, complexity, and duration of further litigation, as well as the risk of maintaining class through trial support approval of Settlement. During the litigation, the Court granted two motions to dismiss with leave to amend, and dismissed a number of Plaintiff's claims without leave to amend. *See* ECF 48; 64. Moreover, Plaintiff had yet to file a motion for class certification, and thus, there was a risk that the class would not be certified. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 888 (C.D. Cal. 2016) ("Because plaintiffs had not yet filed a motion for class certification, there was a risk that the class would not be certified."). Given that the case was still at the pleading stage, it is likely that litigation would have continued for a significant period of time absent settlement. Such litigation would have resulted in substantial expenditure of resources by both sides, particularly if the case reached the class certification stage. Also, Plaintiff would have risked dismissal of some or all of her claims.

Fourth, value conferred by the Settlement is substantial. Class's expert economist estimates the benefit to Class at $12,949,789 and the cost to Whirlpool at $ 17,826,684. Supplemental Declaration of Jason Bass ("Supp. Bass Decl.") ¶ 6, ECF 131-2. With the addition of notice and claims administration costs, attorneys' fees, litigations costs, and Plaintiff's incentive award, the fair market value of Settlement is estimated at $15,866,883.54 and Whirlpool's expected payout is approximately $20,743,778.54. LippSmith Decl. ¶ 15.

Fifth, although this case does not involve any government agencies, the Administrator notified the Attorney General of the United States and Attorneys General of each State about the Settlement, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, on July 18, 2019, and a supplemental CAFA Notice was mailed on August 30, 2019. Admin. Decl. ¶¶ 4-5. An order giving final approval of a proposed settlement may be issued 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the required notice – in this case, November 28, 2019. *See* 28 U.S.C. § 1715(d). Thus, the Court may approve the Settlement.

Finally, the Court's favorable view appears to be shared by class members. Direct notice of the Settlement was sent to 1,088,163 Class Members, and the Administrator received more than

18,000 claim forms (certain Class Members may submit requests for and receive benefits through 2026), while only 18 Class Members objected, and 199 submitted timely opt-out requests. *See* Admin. Decl. ¶ 6; Supp. Admin. Decl. ¶¶ 8-10. The opt-outs account for less than 0.016% of the Class, and objectors account for less than 0.0014% of the Class Members who were sent direct notices of the Settlement. Appr. Mot. at 21. Also, none of objections addressed the award of attorneys' fees and costs reimbursement sought by Class Counsel, or the proposed Service Award to Plaintiff. *See* Supp. Admin. Decl., Exh. B. The lack of any objection to these proposed awards further indicates that the Class is in favor of the Settlement Agreement.

In sum, given the likely duration of the litigation and the risks discussed above, the Court concludes that this recovery is fair and adequate.

### E. Objections

In determining whether to finally approve a class action settlement, the Court considers whether there are objections to the proposed settlement and, if so, the nature of those objections. "However, the fact that there is some opposition does not necessitate disapproval of the settlement; rather, the court must evaluate whether the objections suggest serious reasons why the proposal might be unfair." *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *9 (N.D. Cal. Aug. 28, 2013). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). "Federal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms." *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *7 (C.D. Cal. Jan. 30, 2014) (collecting cases).

The Administrator has received 18 objections, most of which fall within the following categories: (1) objecting that the Settlement does not provide benefits for Freezing Events that occur more than five years after the date of purchase; (2) objecting that the Settlement does not reimburse for purchases of extended warranty coverage; and (3) objecting that the Settlement provides insufficient compensation.

### 1. Objections to Limiting Settlement Benefits to Freezing Events Occurring within Five Years of Purchase

In the Ninth Circuit, settlements are not rejected simply because they "could have been better." *Hanlon*, 150 F.3d at 1027. This is because "[s]ttlement is the offspring of compromise; the question [to] address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* Nine of the 18 objectors are dissatisfied because their refrigerator repairs were outside the five-year eligibility requirement to receive settlement benefits. Supp. Admin. Decl., Ex. B (Clapsadle, Banach, Gorka, Fernandes, Blachowicz, LaRosa, Straka, Geary, and Svoboda/Yatsevitch). These objections fall in the could-have-been-better category and do not affect the fairness of the Settlement.

First, the Settlement is fair because it significantly expands the one-year warranty coverage that the Class Refrigerators would have received without the Settlement. *See Milligan v. Toyota Motor Sales*, U.S.A., Inc., No. C 09-05418 RS, 2012 WL 10277179, at *7 (N.D. Cal. Jan. 6, 2012) (rejecting objections to a 10 year/150,000 mile warranty extension and noting that "[o]f course, settlement involves some line-drawing"); s*ee also Eisen*, 2014 WL 439006 at *8 ("It is significant that the Settlement Agreement provides extended warranty coverage that exceeded the warranties provided …"). Second, The Court is persuaded that in this case, limiting the settlement benefits to five years was a reasonable compromise because Plaintiff's claim for breach of implied warranty is subject to a four-year statute of limitations, tolled by factual allegations of fraudulent concealment. ECF 64 at 7-8. Thus, these objections are OVERRULED.

### 2. Objections to Lack of Reimbursement for Purchases of Extended Warranty Coverage

Two objectors point out that the Settlement does not reimburse those Class Members who purchased extended warranty coverage, and as a result, did not have any out-of-pocket expenses for repairs due to Freezing Events. *See* Supp. Admin. Decl., Exh. B (Diaz and McCay).

First, as Plaintiff explains, the extended warranty coverage was not limited to coverage for the defective drain tube problem alleged in this Lawsuit or addressed in the Settlement. Appr. Mot. at 14. One of the objectors, Nancy McCay, acknowledges that she purchased an extended warranty "mostly due to the freeze-up problem as well [as] the other problems mentioned…." Supp. Admin.

Decl., Ex. B. The Court agrees that because these extended warranties are broader than the terms negotiated under the Settlement and provide additional benefits to their purchasers, lack of reimbursement for their purchase does not render the Settlement unfair. *See Mendoza v. Hyundai Motor Co., Ltd*, No. 15-CV-01685-BLF, 2017 WL 342059, at *10 (N.D. Cal. Jan. 23, 2017) (overruling objections that the settlement did not reimburse the cost of previously purchased extended warranties).

Second, the purchase of extended warranty coverage was voluntary and neither objector claims to have suffered any out-of-pocket expenses. The Court is not persuaded that to be fair, the Settlement must reimburse these voluntary purchases. *See Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO AGRX, 2013 WL 9600948, at *6 (C.D. Cal. Sept. 25, 2013) (overruling objections where the objector was not required to purchase the third party service contract); *see also Eisen*, 2014 WL 439006, at *6 ("[I]t is not unfair to be [sic] limit recovery to actual net out-of-pocket costs."). In sum, the objections based on lack of reimbursement for purchases of extended warranty coverage are OVERRULED.

### 3. Objections to the Sufficiency of Settlement Benefits

Five objectors contend that the reimbursement benefits offered in the Settlement are insufficient. Supp. Admin. Decl., Ex. B (Frame, Chasse, Nugent, Stevens, and Pisacano). As this Court has explained, "a class settlement is not capable of resolving every possible consequential damages claim a Class Member might wish to pursue." *Mendoza v. Hyundai Motor Co., Ltd*, No. 15-CV-01685-BLF, 2017 WL 342059, at *10 (N.D. Cal. Jan. 23, 2017). Thus, "[i]t would not be fair to the class as a whole to set aside an otherwise fair settlement because it does not address unique and difficult to prove hardships suffered by only a few members of the class." *Id.*; *see also Hendricks v. Starkist Co*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *6 (N.D. Cal. Sept. 29, 2016) ("That a more favorable result for some Class Members could potentially have been reached is not a sufficient reason to reject an otherwise fair and reasonable settlement.") (citation omitted).

David Frame requests that the Settlement "provide $50 for the inconvenience, time and effort to those who did the repair on their own." Supp. Admin. Decl., Ex. B. Mr. Frame goes on to note, "there would be no documentary proof since there were no out-of-pocket expenses." *Id.* As

explained above, limiting reimbursement to out-of-pocket expenses is not unfair. Moreover, Mr. Frame's circumstances are unique and his requested compensation of $50 is not supported by any justification or rationale. It would not be fair to derail the Settlement based on this objection. Mr. Frame's objection is thus, OVERRULED.

Mark and Becky Chasse want the Settlement "to broader encompass the likely range of damages" resulting from the drain tube defect. Supp. Admin. Decl., Ex. B. The other damages the Chasses list are "minor flooding in [their] kitchen, intense fan noise [...], caused [the] refrigerator/fan to seize up and stop working," that they had to defrost the refrigerator, the cost of ice blocks to keep food cold in coolers, and food spoiled because of the inoperable refrigerator. *Id*. It is not reasonable to expect the Settlement to compensate every Class Member for every consequential damage related to the defective drain tubes, because "Settlement is the offspring of compromise." *See Hanlon*, 150 F.3d at 1027. Moreover, Plaintiff correctly notes that the Settlement does not release claims for property damage caused to anything other than the Class Refrigerators, so the Chasses may pursue any such claims individually against Whirlpool. *See* Appr. Mot. at 13; First Am. Settlement, § IX.B. Chasses' objection is OVERRULED.

Frank Nugent is dissatisfied with the Settlement amount and requests "due consideration" that would "allow [him] to replace this appliance with a new one of another model and manufacturer." Supp. Admin. Decl., Ex. B. Rebecca Jill Stevens also requests "a new appliance that works, free from any defects or be able to have the problem taken care of at no cost," contending that the $150 reimbursement is insufficient because a "service call" is $100. *Id*. Ann Pisacano's repair costs totaled $255.43, so she also objects to the sufficiency of the Settlement benefits and asked to be reimbursed for the total cost of her repair. *Id*.

"Because the very essence of a settlement is compromise, the Settlement may leave some Class Members without the exact remedies they would prefer." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 2212783, at *23 (N.D. Cal. May 17, 2017) (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982)) (internal quotation omitted). Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per

se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 628 (9th Cir. 1982). It is not unfair that the Settlement does not provide a replacement refrigerator based on a faulty drain tube, or that it does not cover the entire out-of-pocket cost for every Class Member. Thus, Mr. Nugent's, Ms. Stevens's, and Ms. Pisacano's objections are OVERRULED.

### 4. Miscellaneous Objections

Thomas Kelley objected on the basis of "timely notice" because he did not receive the notice by September 5, 2019. Supp. Admin. Decl., Ex. B. But Mr. Kelley may file his claim by January 22, 2020 for a Past Freezing Event, and thus he had adequate notice of the Settlement. *See* Prelim. Order § III.B. Mr. Kelley's objection appears to be a misunderstanding of the terms of the Settlement and is thus, OVERRULED. *See Mendoza*, 2017 WL 342059 at *10-11 (overruling an objection based on misunderstanding). That said, counsel for Plaintiff informed the Court at the Hearing that the Administrator would contact Mr. Kelly to resolve the misunderstanding.

Finally, Catherine Sheveland objects to the Settlement, making nine criticisms of the Settlement and Whirlpool. Supp. Admin. Decl., Ex. B. Ms. Sheveland generally objects to the sufficiency of the settlement – for example, reimbursement decreases with the age of the refrigerator; no consideration for people who fixed the problem themselves; and no consideration for putting up with the defect and the "havoc" it caused. *Id.* As discussed above, the five-year limitation is reasonable and limiting reimbursement to out-of-pocket expenses is not unfair.

In addition, Ms. Shreveland appears to misunderstand some of the terms of the Settlement because she notes that the "settlement assumes households would have saved paper documents of purchase and repair costs." *Id.* This is incorrect because (1) the Settlement provides that Class Members who are unable to provide documentary proof of purchase may submit a declaration to that effect and the Administrator will then search Whirlpool's product registration database to attempt to determine the date of purchase, (2) if no documentary proof of a Freezing Event is available, a Class Member can provide a declaration, under oath, that the claimant experienced a Freezing Event, and (3) if no documentary proof of a Qualifying Repair is available, the Administrator will analyze Whirlpool's warranty claims database to attempt to determine whether

14

the claimant received a Qualifying Repair. First Am. Settlement §§ IV.B.1. Moreover, the Settlement provides that several forms of documentary proofs of purchase and repairs are acceptable, including entries from credit card statements, which often remain available through electronic web-based sources. *See id.* § IV.

Ms. Sheveland further complains that Whirlpool did not send a recall notice, that the "majority of purchasers would not have contacted Whirlpool" because of diagnostic and repair costs, and that "Whirlpool appears to have purposely waited until it was too late for households to resolve the problem." Supp. Admin. Decl., Ex. B. Ms. Shreveland's points are well-taken but they do not address the terms of the Settlement, are mostly speculative of Class Member conduct and Whirlpool's business practices and are not related the fairness or adequacy of the Settlement. Ms. Sheveland's objections are OVERRULED.

### F. Conclusion

Based on the foregoing reasons, and after considering the record as a whole (including the objections), the Court finds that notice of the proposed Settlement was adequate, the Settlement was not the result of collusion, and the Settlement is fair, adequate and reasonable. Thus, the Class's Motion for Final Approval of Class Action Settlement is GRANTED.

## V. MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A. Attorneys' Fees and Costs

#### 1. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (internal citations omitted). "The award of attorneys' fees in a class action settlement is often justified by the common fund or statutory fee-shifting exceptions to the American Rule, and sometimes by both." *Id.* Courts utilize two methods for evaluating attorney fees: (1) lodestar method; and (2) the percentage of recovery method. *See Hanlon*, 150 F.3d at 1029. The lodestar method is appropriate here because the Settlement does not

establish a common fund and the class action is brought under Magnuson-Moss Warranty Act, which is a fee-shifting statute. *See In re Bluetooth*, 654 F.3d at 941 ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes …, where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized."); *see also Gauchat-Hargis v. Forest River, Inc.*, No. 2:11-CV-02737-KJM, 2013 WL 4828594, at *1 (E.D. Cal. Sept. 9, 2013) (applying lodestar method to a case brought under Magnuson–Moss Act).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

### 2. Discussion

The Class requests that the Court award: (1) $1,823,394.75 in attorneys' fees and (2) $26,605.25 in costs reimbursements to Class Counsel. Appr. Mot. at 2.

Addressing expenses first, the Court does not hesitate to approve an award in the requested amount of $26,605.25. Class Counsel has submitted an itemized list of expenses by category of expense (incurred and anticipated), totaling $26,605.25, excluding Settlement Administration fees. *See* LippSmith Decl. ¶ 16. The Court has reviewed the list and finds the expenses to be reasonable.

The Court is likewise satisfied that the request for attorneys' fees is reasonable. The Court has independently reviewed the Class' request for an award of the Settlement's maximum amount of attorney's fees (and the materials the Class submitted in support thereof) for reasonableness.

First, Class Counsel's hourly rates are reasonable. When determining an attorney's reasonable hourly rate, courts weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the requested rates to prevailing market rates of the relevant community. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *op. am. on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community is typically the forum in which the district court sits. *Camacho v. Bridgeport*

*Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  To determine the prevailing market rate, courts may rely on attorney affidavits as well as "decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience." *Trujillo v. Orozco, No.* 5:17-cv-00566-EJD, 2018 WL 1142311, at *2 (N.D. Cal. Mar. 2, 2018); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Here, the relevant community is the Northern District of California.

Class Counsel has submitted a detailed itemization of attorneys' fees and costs.  *See generally* LippSmith Decl.  Class Counsel's hourly rates range from $300 to $800 for attorneys with 4 – 43 years of experience, and between $150 and $200 for paralegals with 3 and 18 years of experience.  *Id.* ¶ 12.  Class Counsel's rates are reasonable and comparable to the fees generally charged by attorneys with similar experience, ability, and reputation for work on similar matters in this judicial district.  *See, e.g., Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-06059-EMC, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ("[D]istrict courts in Northern California have found that rates of $475–$975 per hour for partners and $300–$490 per hour for associates are reasonable."); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates for Bay Area attorneys of $475–$975 for partners and $300–$490 for associates); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (finding no abuse of discretion in awarding fees at a 2008 hourly rates of $875 for a partner and $425 for a fifth-year associate).

Second, Class Counsel has submitted an itemized list of the attorney and paralegal hours spent on investigating, prosecuting, and settling the Class's claims.  LippSmith Decl. ¶ 11. Class Counsel litigated this case since 2015 without any guarantee of payment, committing nearly 2000 hours of attorney and paralegal hours to the case, including an estimate of 250 hours for future work to complete Settlement's claims process through 2026.  *Id.*; Fees Mot. at 7.  The Court has independently reviewed the Class Counsel's hours and finds them reasonable.

Third, a lodestar multiplier of 1.86 is modest and justified.  At the outset, the Court notes that "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."  *Van Vranken v. Atl. Richfield C*o., 901 F. Supp. 294, 298 (N.D. Cal. Aug. 15,

1995).  In addition, Class Counsel achieved significant benefits for the class.  The Class expert economist estimates the value of the settlement at $12,949,789.  LippSmith Decl. ¶ 15; *see also* Supp. Bass Decl. ¶ 12.  With the addition of attorneys' fees and various costs, Whirlpool's payout is even larger. Moreover, Class Counsel litigated this case on a purely contingent basis and thus faced significant risk of non-payment.  *See* ECF 129-1 ¶ 10. Class Counsel also committed substantial financial resources to prosecuting this case without any guarantee of reimbursement, including expert consultation and retention and incurring all litigation costs amounting to more than $26,000.  "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994).  The Court is satisfied that the requested 1.86 multiplier is fair and reasonable.

Finally, as a cross-check, the percentage of recovery analysis confirms the reasonableness of the requested attorneys' fees. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (internal quotation marks omitted).  Class Counsel's requested fee award is well below the 25% benchmark.  As noted above, the Class's expert economist estimates the value of the settlement between $12,949,789 and $17,826,684.00.  LippSmith Decl. ¶ 15; *see also* Supp. Bass Decl. ¶ 12.  Adding attorneys' fees, costs (including the cost of implementing the Notice Plan and claims administration), and the incentive award, the value of the Settlement is estimated between $15,866,883.54 and $20,743,778.54 – making the requested attorneys' fees between 8.8% and 11.5% of the Settlement value.  LippSmith Decl. ¶ 15.  Based on this record, Class Counsel's request for attorneys' fees in the amount of $1,823,394.75 is reasonable.

**B.  Service Award**

The class representative, Ms. Corzine, requests an incentive award in the amount of $5,000. Incentive awards "are discretionary ... and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."

18

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted). "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). Service awards of $5,000 are presumptively reasonable in this judicial district. *See, e.g., Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015).

Ms. Corzine's participation was substantial and essential throughout the pendency of this case, up to settlement discussions and decisions. *See* ECF 129-1 ¶ 20. Given the amount of time and effort Ms. Corzine put into the case and the success of the recovery, an incentive award in the amount of $5,000 is proportional and reasonable. *See Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (district court must "consider the proportionality between the incentive payment and the range of class members' settlement awards."); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (approving $5,000 incentive awards where individual class members each received $12). The Court concludes that the requested $5,000 incentive award is appropriate in this case.

**C. Conclusion**

For the foregoing reasons, the Court concludes that the Class's request for attorneys' fees, costs and incentive award is reasonable and thus, GRANTS Class's Motion for Award of Attorneys' Fees, Costs, and Incentive Award

## VI. ORDER

(1) Class's Motion for Final Approval of Class Action Settlement at ECF 131 is GRANTED;

(2) Class's Motion for Award of Attorneys' Fees, Costs, and Incentive Award at ECF 129 is GRANTED; and

(3) The Clerk shall close the file pursuant to this order and the Order and Final Judgment issued simultaneously.

**IT IS SO ORDERED.**

Dated: December 31, 2019

_____
BETH LABSON FREEMAN
United States District Judge